**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARSH KHURANA, | Case No. 1:18-cv-233-LAK-BCM |
| Plaintiff | ECF Case |
| vs. | |
| WAHED INVEST, LLC; WAHED INC., and JUNAIED WAHEDNA, an individual, | |
| Defendants. | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO**
**FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b)**

---

**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700
*Attorneys for Defendants*

On the brief:
    Gavin J. Rooney, Esq.
    Joshua E. Knapp, Esq.

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ................................................................................................................ 1

STATEMENT OF THE CASE .......................................................................................... 3

    I.    The Terms of Plaintiff's Employment ................................................... 3

    II.   The Complaint's Allegations ..................................................................... 6

MOTION TO DISMISS STANDARD .............................................................................. 7

ARGUMENT ....................................................................................................................... 8

    I.    THE COMPLAINT'S CLAIMS SEEKING $2.4 MILLION IN EQUITY
           COMPENSATION PREMISED UPON AN ALLEGED ORAL
           CONVERSATION SHOULD BE DISMISSED ....................................... 8

           A.    A Single Alleged Oral Conversation Does Not Create a Binding
                   Obligation to Convey $2.4 Million in Stock ................................. 8

           B.    As Plaintiff Resigned Within Three Months of the Alleged
                   Promise, None of Plaintiff's Equity Would Have Vested In Any
                   Event ................................................................................................ 12

    II.   PLAINTIFF'S FRAUD CLAIM SHOULD BE DISMISSED ........................... 13

    III.  PLAINTIFF'S CLAIM TO THE DISCRETIONARY $40,000 BONUS
           SHOULD BE DISMISSED ..................................................................... 15

    IV.  PLAINTIFF'S COERCION AND RETALIATION CLAIMS SHOULD
           BE DISMISSED ...................................................................................... 17

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

CASES

*Arco Capital Corp. v. Deutsche Bank AG*,
  986 F. Supp. 2d 296 (S.D.N.Y. 2013)......................................................................15

*Asarco LLC v. Goodwin*,
  756 F.3d 191 (2d Cir. 2014).....................................................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................7, 12

*Bader v. Wells Fargo Home Mortgage*,
  773 F.Supp.2d 397 (S.D.N.Y. 2011).......................................................................16

*Bailey v. Gray, Siefert & Co., Inc.*,
  752 N.Y.S.2d 646 (1st Dep't 2002) .........................................................................9

*Baraliu v. Vinya Capital, L.P.*,
  2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ...........................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................7, 12

*Berman v. Sugo LLC*,
  580 F.Supp.2d 191 (S.D.N.Y. 2008)....................................................................8, 9

*Braun v. CMGI, Inc.*,
  64 Fed. Appx. 301 (2d Cir. 2003).....................................................................10, 12

*Brener v. Becker Paribas Inc.*,
  628 F. Supp. 442 (S.D.N.Y.1985) ..........................................................................18

*Capital Mgmt. Select Fund v. Bennett*,
  680 F.3d 214 (2d Cir. 2012)....................................................................................14

*Chanchani v. Salomon/Smith Barney, Inc.*,
  2001 WL 204214 (S.D.N.Y. Mar. 1, 2001) ............................................................17

*Collette v. St. Luke's Roosevelt Hosp.*,
  132 F.Supp.2d 256 (S.D.N.Y. 2001).......................................................................18

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991).......................................................................................3

*Criscuolo v. Joseph E. Seagram & Sons, Inc.*,
    2003 WL 22415773 (S.D.N.Y. Oct. 21, 2003) ....................................................................13

*DealTime.com Ltd. v. McNulty*,
    123 F. Supp. 2d 750 (S.D.N.Y. 2000) ...............................................................................15

*Dujardin v. Liberty Media Corp.*,
    359 F. Supp. 2d 337 (S.D.N.Y. 2005) ...............................................................................15

*First Investors Corp. v. Liberty Mut. Ins. Co.*,
    152 F.3d 162 (2d Cir. 1998) ..............................................................................................10

*In re Thelen LLP*,
    736 F.3d 213, 219 (2d Cir. 2013) .........................................................................................3

*Koss v. Wackenhut Corp.*,
    704 F.Supp.2d 362 (S.D.N.Y. 2010) .................................................................................16

*Lanzi v. Brooks*,
    388 N.Y.S.2d 946 (3d Dep't 1976) ...................................................................................14

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986) ...................................................................................................8

*Namad v. Salomon Inc.*,
    537 N.Y.S.2d 807 (1st Dep't 1989) ..............................................................................10, 12

*Natowitz v. Mehlman*,
    542 F.Supp. 674 (S.D.N.Y. 1982) ......................................................................................8

*R.G. Group, Inc. v. Horn & Hardart Co.*,
    751 F.2d 69 (2d Cir. 1984) .............................................................................................10, 11

*Robbins v. Ogden Corporation*,
    490 F.Supp.801 (S.D.N.Y. 1980) .....................................................................................14

*Roberts v. Karimi*,
    251 F.3d 404 (2d Cir. 2001) .................................................................................................9

*Ryan v. Kellogg Partners Institutional Services*,
    945 N.Y.S.2d 593 (2012) ..................................................................................................16

*Saltz v. First Frontier, LP*,
    782 F.Supp.2d 61 (S.D.N.Y. 2010) ..................................................................................14

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016) .......................................................................................................18

*Vetromile v. JPI Partners, LLC*,
  706 F.Supp.2d 442 (S.D.N.Y. 2010) .........................................................................16

*Waxman v. Envipco Pick Up & Processing Servs.*,
  No. 02 Civ. 10132, 2003 U.S. Dist. LEXIS 19295 (S.D.N.Y. Oct. 23, 2003) ......................15

*Weiner v. Diebold Group, Inc.*,
  568 N.Y.S.2d 959 (1st Dep't 1991) ........................................................................16

*Window Headquarters, Inc. v. MAI Basic Four, Inc.*,
  Nos. 91 Civ. 1816, 92 Civ. 5283, 1993 WL 312899 (S.D.N.Y. Aug.12, 1993) ......................9

OTHER AUTHORITIES

Rule 9(b) ...................................................................................................................8

Rule 12(b)(6) ......................................................................................................7, 12, 18

## <u>INTRODUCTION</u>

Plaintiff Harsh Khurana started work at Wahed Invest LLC ("<u>Wahed Invest</u>," and together with its parent Wahed Inc., the "<u>Company</u>") in May 2017 as its Chief Compliance Officer (and, later, its Chief Financial Officer), at an annual salary of $160,000.  After a mere four months of employment, Plaintiff claims that a Company officer orally promised him a grant of equity compensation worth $2,400,000 – fifteen times his annual salary.  When the board of directors of Wahed Inc. (the "<u>Board</u>") later granted him a small fraction of that amount, Plaintiff quit his employment in protest.  He now brings this lawsuit, demanding that the Court enforce the alleged promise and award him $2,400,000 worth of equity compensation for the seven months he worked at Wahed Invest.

The documents governing Wahed Invest's equity compensation program, and the documents governing the grant of equity to Plaintiff, conclusively defeat Plaintiff's breach of contract claim.  They make clear that only the Board (and not an individual officer) has the authority to award equity compensation to employees.  Plaintiff's First Amended Complaint (the "<u>Complaint</u>") admits that the Board did not authorize the purported promise he seeks to enforce. Those documents require that any grant of equity compensation be committed to a written agreement, and accordingly the oral statement relied upon by Plaintiff is insufficient.  The documents governing the terms of Plaintiff's equity compensation also require employees, including Plaintiff, to serve for at least twelve months before any award of equity compensation may vest, and here Plaintiff resigned three months after the alleged grant and seven months after he started his employment.  Indeed, the controlling documents provide that Plaintiff forfeited any unvested equity compensation upon his termination of employment.

Notwithstanding the requirement that any grant of equity compensation be memorialized in a written agreement, the clear and indisputable "norm" with respect to large equity compensation grants to senior officers, is that the awards must be committed to writing and authorized by appropriate persons or committees within the Company.  A sophisticated party such as Plaintiff could not reasonably have believed that an equity package, which could have become very valuable, would be granted and made enforceable in conversation.   Indeed, Plaintiff, as an officer of the Company, knew full well that only the Board could grant equity.

The Complaint's attempt to convert this alleged breach of contract into a fraud claim is even more specious.  Under Second Circuit law, a plaintiff cannot state a fraud claim by simply advancing a conclusory assertion that a defendant never intended to perform a contractual obligation to convey securities; instead, a plaintiff must allege specific facts demonstrating such intent.  But conclusory allegations are all that the Complaint offers here.  Accordingly, the fraud claim – which, notably, is the only claim asserted against the individual officer, Mr. Junaid Wahedna (incorrectly identified as "Junaied" in the Complaint) – should be dismissed.

As we demonstrate further in this memorandum, Plaintiff fares no better with his remaining claims.  Plaintiff's claim for $40,000 due as an alleged bonus fails because that award was discretionary and the Company appropriately declined to pay a bonus to an employee who quit his job.  The Complaint's claims for "coercion" and "retaliation" based upon a single email sent on the eve of litigation fail because the Complaint does not allege that Plaintiff suffered any injury, particularly when Plaintiff simply ignored the email and filed this action.

Accordingly, for the reasons set forth in this memorandum, Plaintiff's Complaint should be dismissed in its entirety.

## STATEMENT OF THE CASE

The following facts derive from the allegations of the Complaint and the relevant agreements and equity plan documents that are incorporated by, or are integral to, the Complaint.[1]

## I.   The Terms of Plaintiff's Employment

Defendant Wahed Invest LLC is a financial services firm that specializes in investments compliant with Islamic law, utilizing sophisticated financial technology.   Defendant Wahed Inc. is the parent of Wahed Invest.   Defendant Junaid Wahedna is the Chief Executive Officer of Wahed Invest.   (First Am. Compl., ¶¶ 3-4).   Wahed Invest hired Plaintiff to be its Chief Compliance Officer in May 2017, and later promoted him to Chief Financial Officer, with an annual salary of $160,000.   (*Id.*, ¶¶ 8-10).   Plaintiff reported to Mr. Wahedna.

The terms of Plaintiff's equity compensation were governed by four documents: his Employment Agreement, the 2017 Equity Incentive Plan ("Equity Plan"), the Equity Incentive Plan Information Statement ("Information Statement") and the form of Restricted Stock Award Agreement.   (Declaration of Gavin J. Rooney, Esq. dated March 12, 2018 ("Rooney Decl."), Exs. A-D).   With respect to the award of stock options or restricted stock as compensation for

---

[1]   When adjudicating a motion to dismiss, a district court may consider extrinsic documents if they are attached to the pleading, incorporated by reference in the pleading, or the court deems the evidence integral to at least one claim in the pleading.   *Asarco LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (citing *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)).   "When a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure."   *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).   Accordingly, a defendant charged with failing to provide an employee with equity compensation is entitled to place before the court the agreements and plan documentation governing that equity compensation.   *See id.* at 48 (permitting consideration of stock purchase agreement, warrant, and offering memorandum because plaintiffs had "undisputed notice" of their contents and they were "integral" to plaintiffs' claim).

employment ("Awards"), these documents made clear that the Board has the sole authority to grant Awards; any such Awards must be memorialized in a writing signed by the Company; the employee receiving the Award has to serve a minimum of one year before any equity rights will vest; and the employee forfeits any unvested Awards upon termination of employment.

The Equity Plan makes clear that the Board holds the exclusive authority to grant stock option and restricted stock Awards under the Equity Plan:

> [The Equity Plan] will be administered by the Board . . . and [t]he Board will have full authority to grant Awards under this Plan.  In particular, subject to the terms of the Plan, the Board will have the authority to select the persons to whom Awards may from time to time be granted . . . , to determine the type of Award to be granted . . . , to determine the number and type of Shares, if any, to be covered by each Award, [and to establish the terms and conditions of each Award Agreement . . . .

(Rooney Decl., Ex. B, §§ 2(a)-(d)).   The Information Statement confirms that the Board's exclusive power to grant Awards:

> The [Board or committee of the Board that administers the Equity Plan] will have full authority and complete discretion to . . . determine the persons who are to be granted [options, restricted stock and restricted stock unit awards], the time or times when such Awards are to be granted, the number of shares to be subject to each such Award, the time or times at which such Awards may be exercised, the vesting schedule applicable to such Awards and the maximum periods for which such Awards are to remain outstanding.

(*Id*., Ex. D, ¶ 3).   Plaintiff's Employment Agreement provides likewise. (*Id.*, Ex. A, ¶ 4) (allowing for grants of equity compensation "[s]ubject to the approval of the Company's Board of Directors or its Compensation Committee," with equity rights vesting "after 12 months of continuous service").

In addition, the Equity Plan requires that Awards be made in writing, signed, and delivered to Wahed Inc. in order to be enforceable.  It states that "[e]ach granted Restricted Stock

Unit shall be evidenced by an Award Agreement in the form that is approved by the Board. . . ."

(Rooney Decl., Ex. B, § 8).  The Equity Plan further provides that:

> The prospective recipient of an Award of Restricted Stock will not
> have any rights with respect to such Award, unless and until such
> recipient has executed an Award Agreement and has delivered a
> fully executed copy thereof to the Company, and has otherwise
> complied with the applicable terms and conditions of such Award.

(Rooney Decl., Ex. B, § 7(b)).

Finally, the governing documents make clear that employees forfeit any unvested grants

of stock upon termination of employment:

> Except as may otherwise be expressly provided by the [Board or
> committee of the Board that administers the Equity Plan] in your
> Award Agreement, if your relationship with the Company
> terminates for any reason (including death or Disability), all
> restricted shares for which the restrictions have not previously
> lapsed shall immediately be forfeited by you. . . .
>
> After your termination of service, you will have a limited period of
> time in which to exercise your *vested* outstanding options. . . . To
> the extent *not vested*, your option will terminate upon your
> termination of employment for any reason (unless your Option
> Agreement provides otherwise).

(Rooney Decl., Ex. C, ¶¶ 21, 27) (emphasis added).  Similarly, the form of Restricted Stock

Award Agreement provided to Plaintiff confirms that "all of the unvested Restricted Stock shall

be automatically forfeited upon the Participant's termination of service to the Company or any

Affiliate for any reason, with respect to Participant."  (Rooney Decl., Ex. D, ¶ 2).

Plaintiff acknowledged these requirements when he received prior Awards of equity

compensation.  In particular, the Board granted Plaintiff an Award of restricted stock in October

2017 memorialized by a signed certificate setting forth its vesting schedule.  (Rooney Decl., Ex.

E).  Plaintiff further acknowledged that for any of this equity compensation to vest, he had to

remain employed by Wahed Invest for at least one year.  (Rooney Decl., Ex. E).  In fact, Plaintiff

acknowledged and accepted that this Award was subject to a one-year "cliff," meaning that nothing would vest until and unless Plaintiff completed a full year of employment. (Rooney Decl., Ex. E).

## II.     The Complaint's Allegations

Plaintiff's Complaint ignores these requirements in his Employment Agreement, the Equity Plan, the Information Statement, and the form of Restricted Stock Award Agreement, and instead asserts that an alleged oral promise by a corporate officer is all that is required to provide him with $2,400,000 in equity compensation.

In particular, Plaintiff alleges that during a conversation held in September 2017, Mr. Wahedna "promised" Plaintiff that would receive an "additional equity stake" in the Company. The Complaint alleges that the additional equity "would be the number of shares equal to $2.4 million based upon the Company's then current valuation of $120,000,000," which Mr. Wahedna allegedly promised would be issued "following the meeting of the Board of Directors in December of 2017." (First Am. Compl., ¶¶ 11-14). Significantly, then, even the Complaint acknowledges that Mr. Wahedna's supposed promise was subject to Board authorization and approval. (*Id.*) During the same conversation, Mr. Wahedna is alleged to have promised a "cash bonus" of $80,000 to Plaintiff, with $40,000 payable immediately and $40,000 paid in December 2017. (*Id.*, ¶ 12).

The Complaint then alleges that the Board refused to grant him the $2,400,000 in equity compensation. It asserts that the "Company . . . did not fulfill its end of the bargain," because it did not make the second $40,000 payment "and did not issue the additional equity promised." Instead, at its December 2017 meeting the Board determined that it would award Plaintiff "only a fraction of the promised equity (.15%)." (*Id.*, ¶¶ 13-14). Apparently disappointed with the lesser amount of additional equity compensation actually authorized by the Board, Plaintiff "made

clear to [Mr. Wahedna] that he could not remain with [Wahed Invest] under these circumstances." (*Id.*, ¶ 15). Accordingly, after only seven months on the job, Plaintiff resigned his employment with Wahed Invest, effective December 30, 2017.

On these factual allegations, the Complaint asserts counts for breach of contract (Count I), specific performance (Count II), fraud (Count III), and failure to pay wages under the New York Labor Law (Count IV). The Complaint asserts Counts I, II, and IV against Wahed Invest and Wahed, Inc., and Count III against all defendants, including Mr. Wahedna. The fraud claim of Count III is the only count asserted against Mr. Wahedna. The Complaint further asserts counts for coercion (Count V) and retaliation (Count VI) against Wahed Invest and Wahed, Inc., based upon an email sent to Plaintiff's counsel in reaction to Plaintiff's threat to file suit. While the Complaint alleges that the email was improper, it does not allege any facts to suggest that Plaintiff suffered any injury as a result.

## MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this "plausibility" standard, a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).

In addition, fraud claims are subject to an even higher pleading standard. Rule 9(b) requires a plaintiff alleging fraud to state "the circumstances constituting fraud or mistake . . . with particularity." Fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations. *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. *See Natowitz v. Mehlman*, 542 F.Supp. 674, 676 (S.D.N.Y. 1982).

## ARGUMENT

## I. THE COMPLAINT'S CLAIMS SEEKING $2.4 MILLION IN EQUITY COMPENSATION PREMISED UPON AN ALLEGED ORAL CONVERSATION SHOULD BE DISMISSED.

The Complaint's centerpiece claim centers upon the alleged oral conversation whereby Mr. Wahedna supposedly "promised" that Plaintiff would receive an "additional equity stake" worth $2,400,000 following the December 2017 Board meeting. (First Am. Compl., ¶¶ 11-14). This bare allegation is insufficient to state a plausible claim for relief, particularly when Plaintiff's Employment Agreement, the Equity Plan, and the Information Statement all make clear that such Awards required Board approval, had to be in writing, and would only vest after Plaintiff served a full year of employment following the Award. As the Complaint alleges no facts to suggest compliance with any of these requirements, the Complaint's claims seeking conveyance of the supposed $2,400,000 worth of equity compensation contained in Counts I and II should be dismissed.

### A. A Single Alleged Oral Conversation Does Not Create a Binding Obligation to Convey $2.4 Million in Stock.

A breach-of-contract plaintiff must allege facts to plausibly demonstrate the existence of a binding contract. *Berman v. Sugo LLC*, 580 F.Supp.2d 191, 202 (S.D.N.Y. 2008) (citing *First*

*Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998); *see also Roberts v. Karimi*, 251 F.3d 404, 407 (2d Cir. 2001) ("a plaintiff in a breach of contract case must prove ... that an enforceable contract existed").  A complaint that fails "to allege facts sufficient to show that an enforceable contract existed" between the parties is subject to dismissal.  *Berman*, 580 F.Supp.2d, at 202 (citing *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537, 2003 WL 23018888, at *4, *4–5 (S.D.N.Y. Dec. 22, 2003) (dismissing a breach of contract claim where insufficient facts were alleged to show an oral agreement existed).  Conclusory allegations will not suffice. *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 Civ. 1816, 92 Civ. 5283, 1993 WL 312899, at *3 (S.D.N.Y. Aug.12, 1993) (dismissing breach of contract claim where plaintiff failed to plead the terms of the contract).

As a threshold matter, the Equity Plan and Information Statement make clear that only the Board has the power to make an Award of equity compensation; accordingly, the Complaint's concession that the Board did not authorize his $2,400,000 in equity compensation disposes of this claim.  In *Bailey v. Gray, Siefert & Co., Inc.*, the First Department affirmed the dismissal of a former employee's breach of contract claim under similar circumstances, where the discharged employee claimed that a principal of the employer orally promised that his stock options would not be forfeited upon his termination.  752 N.Y.S.2d 646, 646-47 (1st Dep't 2002).  The trial court dismissed the complaint and the First Department affirmed because, as here, the applicable equity compensation plan documents specified that authority to administer the plan and grant any waivers of the plan's terms, conditions, restrictions and limitations rested solely with a committee of the corporation.  *Id.*  In other words, the alleged oral statement of a single officer – even one alleged to be the "principal" of the company – was insufficient on its face to form a binding contractual commitment.  Accordingly, the Complaint's admission that

the Board refused to award Plaintiff the purported $2,400,000 in equity compensation disposes of this unlikely claim.  *Accord Namad v. Salomon Inc.*, 537 N.Y.S.2d 807, 809 (1st Dep't 1989) (employee's bid to enforce a so-called "customary policy" with respect to equity compensation vesting failed when the equity plan provided that management retained complete discretion with respect to such policies).

Moreover, the Equity Plan and the Information Statement make clear that any Award had to be in writing to be valid and enforceable.    Accordingly, an alleged oral statement that was never committed to writing (much less a writing authorized by the Board) is insufficient to create a binding contract.

"Under New York law, if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs."  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984).   As the Second Circuit has held, courts may consider four factors in this analysis: *(1)* whether the defendant made an explicit statement that it would only be bound by a written agreement, to which courts must accord "considerable weight"; *(2)* whether the plaintiff has partially performed his obligations; *(3)* whether there was "literally nothing left to negotiate"; and *(4)* whether the transaction involves "complex and substantial business matters" where the requirement of a writing is "the norm." *Id.* 75-76. Applying these factors, the Second Circuit upheld the dismissal of a case nearly identical to this one, where a discharged corporate officer claimed entitlement to stock options orally promised to him that, he claimed, would immediately vest if he were ever terminated.  *Braun v. CMGI, Inc.,* 64 Fed. Appx. 301 (2d Cir. 2003).

These elements are all satisfied here.  *First,* the Equity Plan states unequivocally that "[t]he prospective recipient of an Award of Restricted Stock will *not* have *any* rights with respect

to such Award, *unless and until* such recipient has executed an Award Agreement and has delivered a fully executed copy thereof to the Company". *See* Rooney Decl., Ex. B, § 7(b) (emphasis added). *See also Id.*, Ex. C, ¶ 8 (any option grant will be "executed by one of more documents . . . executed by the Company and the optionee"). Accordingly, this requirement must be afforded "considerable weight." *R.G. Group, Inc,* 751 F.2d at 74.

*Second*, Plaintiff did not partially perform. All of the controlling documents establish that Plaintiff had no entitlement to any stock option or stock award until and unless he completed a full year of employment by the Company following the award. (Rooney Decl., Ex. A, ¶ 4; Ex. B, § 5(b)(iii), § 6(d), § 8; Ex. C, ¶ 27; Ex. D, ¶ 2). The Complaint concedes that Plaintiff failed to perform, because he resigned in December 2017, just three months after the alleged oral promise of stock in September, and seven months after he commenced employment.

*Third*, the Complaint's bare allegation of a promise to award equity compensation worth $2,400,000 left much to negotiate and further specify. Even the Complaint concedes that the parties did not discuss how many shares Plaintiff would receive, because those shares had to be calculated against a valuation of the Company. (First Am. Compl., ¶ 17). Moreover, the Complaint does not allege whether the equity supposedly promised was restricted, unrestricted, common, or preferred stock; what the vesting period or schedule for the equity compensation would have been; or any of the other terms of the Award that, per the Equity Plan, was the Board's sole and exclusive province to determine.

*Finally*, the clear and indisputable "norm" with respect to large equity compensation grants to senior officers is that the awards must be committed to writing and authorized by the Board – as Plaintiff well appreciated. Plaintiff was not some low-level worker unfamiliar with grants of equity compensation. He served as the Company's Chief Financial Officer, a

sophisticated executive with significant financial knowledge and experience who was also a Chartered Financial Analyst. (First Am. Compl., ¶ 2). As recently as October 2017, Plaintiff accepted restricted stock by signing a written grant document and then signing an acknowledgement. (Rooney Decl., Ex. E). As the Second Circuit held in *Braun* using words that could easily be applied here, "[a] sophisticated party such as [Plaintiff] could not reasonably have believed that an options package, which both parties hoped would become very valuable, would be fixed and made enforceable in conversation." 64 Fed. Appx. at 306.

Moreover, it is not even remotely plausible to allege that an employee with a mere four months of tenure would be awarded equity compensation equal to *fifteen times* his annual salary on the strength of an oral conversation. As the First Department held in affirming dismissal of the same sort of claim, "the suggestion that such terms, which according to plaintiff would almost *double* the value of the employment agreement to him, would not be reduced to writing, is simply incredible." *Namad*, 537 N.Y.S.2d at 809) (emphasis in original). If it was "simply incredible" that the defendant would double the plaintiff's ordinary compensation on the basis of a purported oral conversation alone, then it beggars belief when the purported promise of equity was fifteen times Plaintiff's salary. Per *Twombly* and *Iqbal*, such implausible claims fail to pass the test of Rule 12(b)(6); therefore, Plaintiffs' claim for $2,400,000 in equity compensation must be dismissed.

### B.   As Plaintiff Resigned Within Three Months of the Alleged Promise, None of Plaintiff's Equity Would Have Vested In Any Event.

Where the defendant's performance is subject to a condition precedent, the plaintiff must allege and then prove that the plaintiff satisfied the condition precedent. *Baraliu v. Vinya Capital, L.P.*, 2009 WL 959578 at *5 (S.D.N.Y. Mar. 31, 2009). Accordingly, where a stock option or stock award agreement requires the employee to work for a certain period of time

before any right to equity vests, the Plaintiff has no claim if he resigns before serving the required period of time.  *See Criscuolo v. Joseph E. Seagram & Sons, Inc.*, 2003 WL 22415773, at *10 (S.D.N.Y. Oct. 21, 2003) (employee had no right to vesting of stock options because he resigned voluntarily before the date specified in his stock option plan).

All of the controlling documents required Plaintiff to serve a minimum of a year of employment before any stock options or restricted stock would vest.  Such Awards were subject to a "one-year cliff," meaning that none of the shares granted would have vested or been exercisable until Plaintiff had been employed by Wahed for a full year.  (Rooney Decl., Ex. A, ¶ 4; Ex. B, § 5(b)(iii), § 6(d), § 8; Ex. C, ¶ 27; Ex. D, ¶ 2).  The Complaint admits that Plaintiff failed to do so; a mere three months after the alleged oral promise of $2,400,000 in equity compensation, Plaintiff resigned his employment at the Company.  (First Am. Compl., ¶¶ 2, 15).  The controlling documents make clear that Plaintiff forfeited any unvested Awards.  Accordingly, the Complaint and the documents integral to it make clear that Plaintiff failed to fulfill a condition precedent to any claim he is due equity compensation.

## II.     PLAINTIFF'S FRAUD CLAIM SHOULD BE DISMISSED.

The Complaint's fraud claim rests entirely upon the allegation that "[a]t the time [Mr.] Wahedna made the representation to Plaintiff [regarding the promised equity] he had no intent of actually causing Wahed [Invest] to issue the promised equity."  (First Am. Compl., ¶ 29).  Of course, the Equity Plan and Information Statement make clear that the Board, and not Mr. Wahedna personally, had the sole authority to "cause" the Company to issue equity compensation.  Under controlling New York and Second Circuit law, moreover, a plaintiff cannot transform a breach-of-contract claim into fraud by advancing a conclusory assertion that the defendant never had any intent to perform the contract.  Accordingly, the fraud claim – which is the only count asserted against Mr. Wahedna, individually – must be dismissed.

-13-

A fraud claim requires pleading and proof of scienter or intent to defraud. *Saltz v. First Frontier, LP*, 782 F.Supp.2d 61, 75 (S.D.N.Y. 2010). The Second Circuit sets a high bar to plead scienter in a situation where the plaintiff claims that a defendant falsely promised to perform its obligations under a contract. As the Second Circuit has made clear, "a conclusory allegation of intent to breach at the time of execution will not do." *Capital Mgmt. Select Fund v. Bennett*, 680 F.3d 214, 226 (2d Cir. 2012). Instead, the breach itself must demonstrate "strong circumstantial evidence of an intent to deceive," or the complaint must allege "particularized facts supporting a 'cogent and compelling' inference" of fraudulent intent. *Id.* To recover on a fraud claim, a plaintiff must plead and prove on the part of defendant "a preconceived and undisclosed intention not to perform his obligations." *Robbins v. Ogden Corporation*, 490 F.Supp.801, 809 (S.D.N.Y. 1980). An allegation that the defendant later breached the contract is insufficient to allege that the defendant did not intend to perform at the time performance was promised. *Lanzi v. Brooks*, 388 N.Y.S.2d 946 (3d Dep't 1976).

Here, the Complaint fails to allege any facts – much less particularized facts – to support a cogent and compelling inference of fraudulent intent. Instead, the Complaint relies upon formulaic statements and conclusions, such as that Defendants "intended to deceive" and were "malicious." (First Am. Compl., ¶ 31). The Complaint fails to accompany these conclusory allegations with any pleadings of specific facts to prove there was a fraudulent intent, as required by *Bennett*, *Robbins*, and *Lanzi*. The claim should therefore be dismissed, and Mr. Wahedna in particular should be dismissed as an individual party to this action.

Conclusory allegations such as these cannot convert a breach-of-contract claim into fraud. Judges in this District have repeatedly dismissed similar attempts to turn breach-of-contract claims into fraud where the plaintiff relies upon conclusory allegations akin to those

here.  *See Arco Capital Corp. v. Deutsche Bank AG*, 986 F. Supp. 2d 296, 305 (S.D.N.Y. 2013) (no facts alleged that the defendant had a "secret intention not to perform its contractual obligations"); *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 352 (S.D.N.Y. 2005) (no facts pled to show that defendant never intended to honor a promise to promote the plaintiff to division head); *Waxman v. Envipco Pick Up & Processing Servs.*, No. 02 Civ. 10132, 2003 U.S. Dist. LEXIS 19295, at *24-36 (S.D.N.Y. Oct. 23, 2003) (no facts pled to show that defendant never intended to honor promises to transfer depository receipts and to employ plaintiff in a "key man" position); *DealTime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750, 761 (S.D.N.Y. 2000) (conclusory allegation of an "undisclosed intention" to impose a vesting schedule on stock options insufficient to support fraud claim).

## III.  PLAINTIFF'S CLAIM TO THE DISCRETIONARY $40,000 BONUS SHOULD BE DISMISSED.

In Counts I and IV of the Complaint, Plaintiff alleges that the Company owes him the second half ($40,000) of a $80,000 bonus that Mr. Wahedna allegedly offered to provide him "to incent him to remain with [Wahed Invest]."  (First Am. Compl., ¶¶ 11-13, 34-36).  Plaintiff asserts that he is "entitled" to the $40,000 bonus payment, yet the Complaint alleges no fact to demonstrate why this is so or how it is the Plaintiff earned the bonus.  (First Am. Compl., ¶ 36).  The Complaint's failure to allege facts demonstrating that Plaintiff was "entitled" to the second $40,000 payment requires dismissal of this claim, because the Company did not breach any contract by failing to pay a discretionary bonus and such a bonus cannot be considered "wages" for purposes of New York Labor Law.

Count IV alleges that the Company's failure to make the full bonus payment violated Section 193 of New York Labor Law, which prohibits employers from making unauthorized deductions from employee wages.  Section 190 of New York Labor Law defines wages as "the

earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission, or other basis." *Id.* § 190(1). Under New York law, "typically, the term wages does not include bonus, profit-sharing, and other forms of incentive compensation unless the incentive compensation is already 'earned' by the employee." *Koss v. Wackenhut Corp.*, 704 F.Supp.2d 362, 369 (S.D.N.Y. 2010). "A bonus is 'earned' when the employee acquires a vested interest in the award and its payment is not conditioned upon some occurrence or left to the discretion of the employer." *Id.*

Accordingly, Section 193 of New York Labor Law does not protect bonuses that are "payable at the discretion of the employer." *Weiner v. Diebold Group, Inc.*, 568 N.Y.S.2d 959, 960 (1st Dep't 1991). It is only when the payment of a bonus is "guaranteed and non-discretionary as a term and condition of employment" that it will it be considered "wages." *Ryan v. Kellogg Partners Institutional Services*, 945 N.Y.S.2d 593, 602 (2012). An employee's entitlement to a bonus is ordinarily established by the terms of the employer's written bonus plan. *Bader v. Wells Fargo Home Mortgage*, 773 F.Supp.2d 397, 407-08 (S.D.N.Y. 2011) (citing *O'Dell v. Trans World Entm't Corp.*, 153 F.Supp.2d 378, 397 (S.D.N.Y. 2001)). Thus, "entitlement to a bonus only exists where the terms of the relevant contract require it." *Vetromile v. JPI Partners, LLC*, 706 F.Supp.2d 442, 448 (S.D.N.Y. 2010).

Here, the Complaint fails to allege Plaintiff's entitlement to the $40,000 bonus, whether under the terms of a written bonus plan or otherwise. Plaintiff cites no documentation wherein the Company allegedly guaranteed that it would make the $40,000 bonus payment provided Plaintiff satisfied certain performance criteria. In fact, Plaintiff's Employment Agreement makes no mention of providing Plaintiff with any bonus at all. And nowhere does the Complaint allege

-16-

that Plaintiff *earned* the sought-after $40,000 bonus payment or that his interest in the bonus payment *vested* at any point.

Quite to the contrary, all that the Complaint alleges is that the Company provided Plaintiff with a discretionary bonus of $40,000 in September 2017, suggested that a further such bonus would be forthcoming, and then – when Plaintiff quit his job – the Company (not surprisingly) elected not to give him the second bonus. As the Company acted well within its rights in doing so with regard to this discretionary bonus, Plaintiff's claims seeking the $40,000 through Counts I and IV should be dismissed.

## IV.  PLAINTIFF'S COERCION AND RETALIATION CLAIMS SHOULD BE DISMISSED

Counts V and VI of Plaintiff's Complaint allege that after Plaintiff's counsel sent correspondence stating that this suit would be filed, the Company's Chief Legal Officer responded with an email suggesting that doing so might result in criminal liability in foreign countries. (First Am. Compl., ¶¶ 38-45, 46-53). The Complaint cites to criminal statutes (New York Penal Code), rules of professional responsibility (New York Lawyer's Code of Professional Responsibility), and labor law (New York Labor Law), and then asserts counts for "coercion" and "retaliation," but fails to explain why this equates with a civil cause of action or injured Plaintiff in any way. (First Am. Compl., ¶¶ 42-44, 50-52). These claims should therefore be dismissed.

There is no affirmative cause of action for "coercion." To the contrary, coercion is a defense to a claim that the defendant consented to a contract where the party asserts that it was coerced into signing the document. *See, e.g., Chanchani v. Salomon/Smith Barney, Inc.*, 2001 WL 204214, at *2 (S.D.N.Y. Mar. 1, 2001) ("a party generally will be held to a signed contract unless he can demonstrate special circumstances, such as duress or coercion, that contradict his

intent to be bound"); *see also Brener v. Becker Paribas Inc.*, 628 F. Supp. 442, 446 (S.D.N.Y.1985) (claims concerning coercion go to the formation of a contract).  Likewise, a cause of action for retaliation requires, among other things, that the Plaintiff allege that he was deprived of a promotion, compensation, or some other benefit in the context of employment as a punishment for asserting his legal rights.  *See, e.g., Collette v. St. Luke's Roosevelt Hosp.*, 132 F.Supp.2d 256, 274 (S.D.N.Y. 2001) (employee asserted claims of retaliation under federal, state and local anti-discrimination laws alleging that she had been denied a promotion and discharged in retaliation for making a complaint).

Here, however, the Complaint does not allege that Plaintiff suffered any such injury.  All that is alleged is the receipt of a single email, which Plaintiff's counsel evidently ignored.  It is hornbook law that injury is required to establish Article III standing, and is certainly required in order to set forth a claim for relief.  *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (a plaintiff must allege facts demonstrating that he or she suffered an injury in fact).  These allegations do not pass muster under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint against Defendants should be dismissed in its entirety.

Dated: March 12, 2018            **LOWENSTEIN SANDLER LLP**
       New York, New York

                                 By: /s/ Gavin J. Rooney
                                     Gavin J. Rooney
                                     Joshua E. Knapp
                                     1251 Avenue of the Americas
                                     New York, New York 10020
                                     (212) 262-6700
                                     grooney@lowenstein.com
                                     jknapp@lowenstein.com

                                     *Attorneys for Defendants*