UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARSH KHURANA,

Plaintiff,

-against-

WAHED INVEST, LLC, et al.,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb 26 2019

18-CV-233 (LAK) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. LEWIS A. KAPLAN**

**BARBARA MOSES, United States Magistrate Judge.**

Invoking this Court's diversity jurisdiction, plaintiff Harsh Khurana, a former employee of defendant Wahed Invest, LLC (Wahed LLC), asserts claims for breach of contract, specific performance, fraud, failure to pay wages in violation of N.Y. Labor Law ("NYLL") § 198(1-a), coercion in violation of N.Y. Penal Law § 135.60, and retaliation in violation of NYLL § 215 against Wahed LLC, its parent Wahed Inc., and their Chief Executive Officer, Junaid Wahedna. The first four claims arise from Wahedna's alleged oral promise to pay plaintiff an $80,000 cash bonus and award him a $2.4 million equity stake in the business. The coercion and retaliation claims arise from an email sent to plaintiff's counsel, in response to a prelitigation letter, warning of "potential criminal liability" that "may attach in foreign jurisdictions should this action be pursued."

Defendants have moved to dismiss all of plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, I respectfully recommend that the motion be granted. The coercion claim should be dismissed with prejudice, because there is no private right of action under Penal Law § 135.60. The remaining claims should be dismissed with leave to amend.

I.      BACKGROUND

A.      Facts Alleged in the First Amended Complaint

Plaintiff is a resident of New Jersey and a Chartered Financial Analyst. First Amended Complaint (FAC) (Dkt. No. 8) ¶ 2. Wahed LLC is a Delaware limited liability company. *Id*. ¶ 3. Wahed LLC is wholly owned by Wahed Inc., which is a Delaware corporation. *Id*. Both Wahed entities (collectively the Company) are headquartered in New York City, and together they "form an investment company purporting to offer investment opportunities compliant with Islamic financial ethics." *Id*. Wahedna is the Company's Chief Executive Officer and at all relevant times "had 70% voting rights on the board," *id*. ¶ 4, presumably meaning the Board of Directors of Wahed Inc. Wahedna is a citizen of the United Arab Emirates who "spends a significant portion of his work time in New York City." *Id*.

In May 2017, plaintiff was hired to serve as Chief Compliance Officer of the Company, reporting to Wahedna. FAC ¶ 8. The FAC is silent as to the terms under which he was hired or initially compensated. Plaintiff performed well, "driving up the value of the enterprise," and in the summer of 2017, Wahedna promoted plaintiff to Chief Financial Officer. *Id*. ¶¶ 8-10. In September of 2017, Wahedna met with plaintiff in person to discuss his position and compensation. *Id*. ¶ 11. The purpose of the discussion was "to incent [plaintiff] to remain with the Company" and to "follow through on [Wahedna's] prior promises to award [plaintiff] a substantial equity stake." *Id*. There is no suggestion in the FAC that plaintiff was planning to leave the Company. Nor does plaintiff explain, in his pleading, what "prior promises" Wahedna had made regarding a "substantial equity stake."

During the meeting, Wahedna proposed that plaintiff "be elevated to the dual role of Chief Strategy Officer and Chief Financial Officer." FAC ¶ 11. As part of the offer, Wahedna "promised that the Company would pay Plaintiff a cash bonus of $80,000, with $40,000 payable immediately

and $40,000 paid in December 2017." *Id.* ¶ 12. Wahedna also told plaintiff "that the equity stake for Plaintiff would be the number of shares equal to $2.4 million based on the Company's then current valuation of $120,000,000." *Id.* Wahedna promised that "the equity would be issued prior to the close of the next financing round and following the meeting of the Board of Directors in December 2017." *Id.* Plaintiff "agreed to the proposal and continued to work for the Company and execute on all that he was asked." *Id.* ¶ 13.

Insofar as it can be determined from the FAC, plaintiff and Wahedna never discussed the form that the "equity stake" would take (for example, an option to purchase common stock, a grant of stock units or restricted common stock, or an unrestricted grant), the manner in which it would be valued, the schedule on which it would vest, or how long plaintiff would be required to "remain with the Company," FAC ¶ 11, in order to fulfill his side of the bargain. The FAC is equally silent as to whether any party evidenced any intent to be bound (or not to be bound) in the absence of a written agreement covering these and related matters.

The Company paid the first half of the promised cash bonus to plaintiff, on an unspecified date, but "failed to pay the second half of the bonus." FAC ¶ 13. Moreover, "the Company did not issue the additional equity promised." *Id.* Instead, following the December 2017 Board meeting, Wahedna advised plaintiff "that he would receive only a fraction of the promised equity (.15%)." *Id.* ¶ 14. Plaintiff does not disclose the date on which he was given this information. Nor does he state whether the "next financing round" had closed at that point. Similarly, plaintiff provides no further detail concerning his scaled-down equity package.[1]

---

[1] He does not explain, for example, whether it consisted of options, stock units, or restricted or unrestricted shares. Nor does he explain his math. Thus, it is not clear whether plaintiff was told that he would receive .15% (15/100 of 1%) of the Company or 0.15% (15/100 of 1%) of the equity that Wahedna had promised him a few months earlier.

"Faced with the Company's failure to follow through on its promises," plaintiff left his employment. FAC ¶ 15. He does not specify the date on which he resigned. Insofar as it can be determined from the face of his pleadings, no equity was ever issued to plaintiff.

On January 4 and 5, 2018, respectively, plaintiff's counsel sent a letter to the Company and a draft complaint to the Company's outside counsel. FAC ¶¶ 39-40. On January 9, 2018, counsel received a responding email from Musa Abduul-Basser, the Company's Chief Legal Officer, stating:

> In connection with your January 4th letter to our company and subsequent conversations with Lowenstein Sandler LLP regarding Mr. Khurana's allegations and contemplated civil action, please see attached the pending complaint notices from our counsel in India and the United Arab Emirates. Given the international nature of this dispute you may wish to advise your client of the potential **criminal liability** *that* may attach in foreign jurisdictions should **this action be pursued**.

FAC ¶ 41 (emphasis in the original).

Plaintiff does not describe (or attach) the letter that precipitated this response, the remainder of Abduul-Basser's email, or the "pending complaint notices" referenced in that email. Nor does plaintiff otherwise explain the "international nature" of what appears to be an employment-related dispute between a New Jersey resident and two Delaware-chartered businesses headquartered in New York.

### B.    Additional Factual Material

Defendants have submitted – and ask the Court to consider, in connection with their motion to dismiss – a number of documents that fill at least some of the gaps left by the FAC. The first such document is the written employment agreement between plaintiff and Wahed LLC, which is signed by Wahedna as Wahed LLC's CEO (and uses the term "Company" to mean Wahed LLC). *See* Rooney Decl. (Dkt. No. 13), Ex. A (Employment Agreement), at 1, 3. Plaintiff was promised a "starting salary" of $160,000 per year, "subject to adjustment pursuant to the Company's

employee compensation policies in effect from time to time," and an option, "subject to the approval of the Company's Board of Directors or its Compensation Committee," to purchase "0.6% of the Company's common stock" at an exercise price to be determined when the option was granted, with a four-year vesting schedule. Emp. Ag. ¶¶ 2, 4. Plaintiff's employment was "at will." *Id*. ¶ 6.

The Employment Agreement contains two different integration clauses. The first states that although plaintiff's "job duties, title, compensation, and benefits" might change, "the 'at will' nature of your employment may only be changed in an express written agreement signed by you and a duly authorized officer of the Company (other than you)." Emp. Ag. ¶ 6. The second states:

> This letter agreement and Exhibit A constitute the complete agreement between you and the Company, contain all of the terms of your employment with the Company and supersede any prior agreements, representations or understandings (whether written, oral or implied) between you and the Company. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company.

*Id*. ¶ 8.[2] The Employment Agreement also specifies that New York law governs any disputes concerning plaintiff's employment "or any other relationship between you and the Company." *Id*.

Defendants also submitted the Wahed Inc. 2017 Equity Incentive Plan, Rooney Decl. Ex. B (the Plan), together with a related Information Statement and form of Restricted Stock Award. *Id*. Exs. C, D. Section 2(d) of the Plan authorizes the Wahed Inc. Board of Directors to grant various Awards (defined in § 1(b) to include options, restricted stock, and restricted stock units) to employees and others, and to determine the terms and conditions of each such Award. The Plan was adopted and became effective on October 11, 2017. *Id*. at 15.

---

[2] Exhibit A to the Employment Agreement is described as a Proprietary Information and Inventions Agreement, *see id*. ¶ 5, but has not been supplied to the Court.

Finally, defendants submitted a stock certificate, dated October 12, 2017, evidencing 11,160 restricted shares of Wahed Inc. common stock issued to plaintiff pursuant to the Plan and accepted by him on October 23, 2017. Rooney Decl. Ex. E (Stock Certificate), at ECF pages 2-4. One-half of the shares (5,580) were scheduled to vest on April 17, 2018, with the remainder vesting in 12 equal installments over the following 12 months. *Id*. at ECF page 6. The document notes that "[v]esting terminated" on December 30, 2017, because plaintiff "voluntarily resigned from the Company." *Id*. at ECF pages 6-7.

### C.    Procedural History

Plaintiff filed this action on January 11, 2018 – two days after Abduul-Basser's email – and amended his complaint on January 30, 3018. He asserts six claims: Count I (FAC ¶¶ 16-20) seeks damages for breach of his oral contract with the Company. Count II (*id*. ¶¶ 21-24) seeks specific performance of the equity terms of that contract. Count III (*id*. ¶¶ 25-31) seeks compensatory and punitive damages for fraud, based on the allegation that Wahedna "had no intent of actually causing [the Company] to issue the promised equity" when he contracted to do so in September 2017. *Id*. ¶ 29. Count IV (*id*. ¶¶ 32-37) seeks to recover the second $40,000 bonus payment, plus another $40,000 in liquidated damages, and legal fees, pursuant to NYLL § 198(1-a). Count V (FAC ¶¶ 32-37) alleges that the Company's "threat of criminal prosecution should Plaintiff commence this lawsuit" constitutes coercion, in violation of New York Penal Code § 135.60, and seeks punitive damages "in addition to damages for emotional distress." *Id*. ¶ 45. Finally, Count VI (FAC ¶¶ 46-53) alleges that the same email "constitutes retaliation for Plaintiff's assertion of a claim under New York Labor Law section 198(1-a)," entitling him to damages under NYLL § 215, "including the liquidated damages provided thereunder." FAC ¶ 53. All six claims are asserted against Wahed LLC and Wahed Inc. CEO Wahedna is named as a defendant only as to the fraud claim asserted in Count III.

On February 1, 2018, the Honorable Lewis A. Kaplan, United States District Judge, referred the case to me for general pretrial management and report and recommendation on dispositive motions. (Dkt. No. 9.)

On March 12, 2018, defendants filed their motion to dismiss all of plaintiff's claims pursuant to Rule 12(b)(6). (Dkt. No. 11.) On March 20, 2018, during an initial case management conference, I offered plaintiff the opportunity to further amend his pleading in light of the pending motion. His counsel declined, stating that he was "happy to stand on" the FAC. Tr. dated March 29, 2018 (Dkt. No. 24), at 14:18-22; *see also* Order dated March 20, 2018 (Dkt. No. 20), ¶ 1.

Plaintiff filed his opposition papers on March 30, 2018, arguing, among other things, that he should be given leave to amend any claims that the Court deems inadequately pleaded. Pl. Mem. (Dkt. No. 21), at 20. As to the contract claim, plaintiff suggests that he could "clarify" the terms of the promised equity grant, but does not say how. *Id*. at 11. As to the fraud claim, plaintiff states that he has "uncovered further evidence" that Wahedna did not intend to honor the alleged oral contract when he entered into it. *Id*. at 15. As to the remaining claims, plaintiff does not state what additional facts he could plead if given the opportunity to do so.

After the matter was fully briefed, the Court heard oral argument. (Dkt. No. 27.) Discovery has been stayed pending decision on the motion to dismiss. *See* Order dated March 20, 2018, ¶ 2.

## II.    DISCUSSION

### A.    Standards

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept as true all *facts* alleged in the complaint," *Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 237 (2d Cir. 2007) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002)) (emphasis added), and "draw

all reasonable inferences in favor of the plaintiff." *Kassner*, 496 F.3d at 237 (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)); *accord McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court should not accept legal *conclusions* as true: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

If the plaintiff's "short and plain statement" fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). A claim achieves "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a plaintiff cannot "nudge[ ] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79. Plausibility depends on "a host of considerations," including "the full factual picture presented by the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556 (quoting *Neitzke v. Williams*, 490

U.S. 319, 327 (1989)); *see also Alvarez v. City of New York*, 2012 WL 6212612, at *1 n. 10 (S.D.N.Y. Dec. 12, 2012) (Kaplan, J.) ("To the extent defendants contend that it is inherently implausible that one of the Shooting Officers had an opportunity to intervene because he himself was shot during the incident, that question cannot be resolved as a matter of law at this stage."). However, "naked assertions" of the ultimate facts required for recovery, without "some further factual enhancement," may "stop[ ] short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557. Put another way, Rule 8(a)(2) requires "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* (alterations in the original).

A higher pleading standard applies to allegations of "fraud or mistake," which "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *See also Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (Rule 9(b) "governs the pleading of fraud claims and it requires that plaintiff plead fraud with particularity.") "[T]he adequacy of particularized allegations under Rule 9(b) is case- and context-specific." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (quoting *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 236 (2d Cir. 2015)). "Failure to satisfy the Rule 9(b) standard, if applicable, is grounds for dismissal." *McBeth v. Porges*, 171 F. Supp. 3d 216, 223 (S.D.N.Y. 2016) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.2006) and *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010)).

"The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)

(emphasis in the original). Thus, if "matters outside of the pleadings are presented to and not excluded by the court" on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  However, a complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs* , 647 F.3d at 422). The court may properly consider documents falling into these categories, together with "legally required public disclosure documents filed with the SEC," without converting a Rule 12(b)(6) motion into a motion for summary judgment. *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 64 (S.D.N.Y. 2015) (Kaplan, J.) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

For a document to be "integral to a complaint," the plaintiff "must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'" *Osby v. City of New York*, 2016 WL 4372233, at *3 (S.D.N.Y. Aug. 15, 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *accord City of Westland*, 129 F. Supp. 3d at 64 (court may rely on documents "possessed by or known to the plaintiff and upon which it relied in bringing the suit."). "Even if a document meets the dual requirements of integrality – reliance and notice – a court still may not consider it on a motion to dismiss if there is a dispute 'regarding the authenticity or accuracy of the document' or 'the relevance of the document' to the dispute." *Osby*, 2016 WL 2016 WL 4372233, at *3 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

### B.  The Extrinsic Documents

According to defendants, the Employment Agreement, the Plan, and the other documents attached to the Rooney Declaration govern plaintiff's entitlement to equity compensation and show,

10

among other things, that "the Board has sole authority to grant Awards; any such Awards must be memorialized in a writing signed by the Company; the employee receiving the Award has to serve a minimum of one year before any equity rights will vest; and the employee forfeits any unvested Awards upon termination of employment."  Def. Mem. (Dkt. No. 12) at 4. Therefore, defendants argue, plaintiff cannot plausibly allege the existence of an enforceable contract for a $2.4 million equity stake in the Company, based on "a single alleged oral conversation," in the absence of Board approval, a written award, and at least one year's service.  *Id*. at 8-13.

I disagree. First, the proffered documents are less compelling than defendants believe them to be. The Employment Agreement promised plaintiff an option to purchase 0.6% of the Company's common stock, on a four-year vesting schedule, subject to Board approval, but did not rule out other or different equity grants that might later be offered. To the contrary; it expressly stated that plaintiff's "job duties, title, compensation, and benefits" might change.  Emp. Ag. ¶ 6.[3]

Similarly, although the Plan authorizes the Board to award options, restricted stock, and stock units, subject to various terms and conditions, it does not require a one-year "cliff" before any equity rights could vest. *See*, *e.g*., Plan § 8 (the Board may grant Restricted Stock Units subject to such conditions "as it may deem appropriate," including conditions as to "vesting, time, and form of payment and termination of units").  Nor did the Plan restrict the Board from adopting "other or additional compensation arrangements," including arrangements "applicable only in specific cases." *Id*. § 12(b). Moreover, plaintiff alleges that Wahedna "had 70% voting rights on

---

[3] The integration clause in ¶ 8 of the Employment Agreement states that the document "contain[s] all of the terms of your employment with the Company" and "may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company." Emp. Ag. ¶ 8. However, since one of the existing "terms" of plaintiff's employment was that his "job duties, title, compensation, and benefits" might change, I do not read the integration clause as requiring a new writing every time such a change occurred.

11

the board," FAC ¶ 4. Taking that allegation as true for purposes of the pending motion – and assuming that no supermajority vote was required to issue an award – plaintiff has adequately alleged that Wahedna could have caused the Board of Directors to issue whatever equity compensation arrangement he deemed appropriate for an employee.

Even if the documents relied on by defendants furnished a complete defense to plaintiff's claims for equity compensation, I would – and I do – exclude them from consideration on the present motion. None of them were attached to the FAC or referenced therein, even obliquely. Defendants argue that they are nonetheless "integral to the FAC," Def. Reply Mem. (Dkt. No. 26) at 2, in that they "indisputably govern all grants of equity compensation," which could "only have occurred pursuant to these integral documents," such that plaintiff "cannot credibly contend" that they are not "relevant." *Id*. at 3. But that is not what "integral" means.

A document is "integral to the complaint" for purposes of a Rule 12(b)(6) motion if the plaintiff had "actual notice" of the document or its contents (which plaintiff here certainly did) and "relied upon" that document in framing his complaint. *Chambers*, 282 F.3d at 153; *City of Westland*, 129 F. Supp. 3d at 64; *Osby*, 2016 WL 4372233, at *3.

> A necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough. This generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint.

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (internal quotation marks and citations omitted) (emphasis in the original).

In *Nicosia*, the plaintiff sued Amazon under the Consumer Product Safety Act after purchasing a weight-loss product containing a drug that should have been removed from the market. The district court dismissed the suit in favor of arbitration after reviewing copies of

Amazon's Registration Page (in the form used when plaintiff first created his Amazon account), its Order Page (in the form used at the time of plaintiff's purchase), and the 2008 and 2012 iterations of its Conditions of Use – all offered by Amazon to show that plaintiff could not have purchased the product without assenting to the Conditions of Use, which contained an arbitration clause. 834 F.2d at 227. On appeal, the Second Circuit concluded that the district court properly considered the Order Page and the 2012 Conditions of Use, because they were "an embodiment of the contract made between Nicosia and Amazon" when plaintiff purchased the disputed product, "and thus integral to the complaint." *Id*. at 234. The court explained:

> [T]he complaint alleges injuries on the basis of the purchases made on Amazon "made possible only via clicking 'Place your order' on the Order Page," thus, the Order Page and the linked 2012 Conditions of Use were part of the contract incorporated into the complaint by reference.

*Id*. However, since plaintiff never alleged that he created his Amazon account in 2008, did not "rely on" any 2008 materials in his complaint, and disputed the relevance of those materials to his claims, the 2008 Registration Page and linked 2008 Conditions of Use were not "integral to the complaint" and should have been excluded. *Id*. at 234-35.

In this case, plaintiff alleges that he was hired by the Company in May of 2017, FAC ¶ 8, meaning that some form of agreement must have been reached at that time. However, he does not allege that any of the rights upon which he now sues were created when he was hired. To the contrary: he claims that an enforceable oral contract was formed in September 2017, under which he agreed to remain with the Company and defendants agreed to pay him an $80,000 cash bonus and give an "equity stake" worth $2.4 million. *Id*. ¶¶ 11-13. Since plaintiff does not "rely upon" either the terms or the existence of his original Employment Agreement, it is not "integral" to his complaint. *Nicosia*, 834 F.3d at 23-41.

The Plan and related documents are even more remote, in that the Plan was not created until after the formation of the alleged oral contract upon which plaintiff now sues. Moreover, although it appears that plaintiff was awarded 11,160 restricted shares in October 2017 pursuant to the Plan, *see* Rooney Decl. Ex. E, he does not reference that award – much less rely on the underlying Plan – anywhere in his pleading. *See Snyder v. Fantasy Interactive, Inc.*, 2012 WL 569185, at *3 (S.D.N.Y. Feb. 9, 2012) (considering terms of plaintiff's employment agreement, because plaintiff expressly referenced it in her complaint, but declining to consider defendant's Employee Manual, where plaintiff did not reference it or "rel[y] on the Manual's terms and effect").

This is not to say that the Employment Agreement, the Plan, and the other documents attached to the Rooney Declaration are irrelevant to the parties' dispute. Should the case proceed to summary judgment or trial, some or all of those documents could well "undermine the legitimacy of the plaintiff's claim." *Nicosia*, 834 F.3d at 231. However, the Court cannot rely on them for purposes of testing "the formal sufficiency of the plaintiff's statement of a claim for relief" under Rule 12(b)(6). *Glob. Network Commc'ns*, 458 F.3d at 155.

### C.     Breach of Contract

Because plaintiff's first two claims (for breach of contract and specific performance) arise out of the same alleged oral contract, I consider Counts I and II of the FAC together.  *See Vanacore v. Vanco Sales LLC*, 2017 WL 2790549, at *4 (S.D.N.Y. June 27, 2017) ("[b]ecause the oral agreement is unenforceable, Plaintiffs' claims for breach of contract and specific performance of that contract must fail"). Setting aside defendants' arguments based on the extrinsic documents, I nonetheless agree that plaintiff has not plausibly alleged the existence of an enforceable contract. *See* Def. Mem. at 8. Nor has he adequately pleaded its breach.

####    1.    Material Terms

Under New York law, the applicability of which all parties assume,[4] "the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Berman v. Sugo LLC,* 580 F. Supp. 191, 202 (S.D.N.Y. 2008) (citing *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir. 1998)).  As to the first element, the plaintiff must "prove . . . that an enforceable contract existed." *Roberts v. Karimi,* 251 F.3d 404, 407 (2d Cir. 2001); *see also Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, at *4 (S.D.N.Y. Dec. 22, 2003) (dismissing contract claim because plaintiff "failed to allege facts sufficient to show that an enforceable contract existed"), *aff'd,* 110 F. App'x 191 (2d Cir. 2004).

An oral employment contract – even a contract promising equity compensation – is not for that reason alone unenforceable. *See*, *e.g*., *Canet v. Gooch Wear Travelstead*, 917 F. Supp. 969, 990 (E.D.N.Y. 1990). However, to create a binding contract, oral or written,

> . . . there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. This requirement assures that the judiciary can give teeth to the parties' mutually agreed terms and conditions when one party seeks to uphold them against the other. Generally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract.

*Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589, 715 N.E.2d 1050, 1053 (1999). Thus, "[a] breach of contract claim will be dismissed . . . as being too

---

[4] New York would apply to plaintiffs' claims even if his Employment Agreement did not contain a New York choice of law clause. "[A] contract executed in New York and litigated in a district court sitting in New York while exercising diversity jurisdiction must be interpreted pursuant to New York law." *82-11 Queens Blvd. Realty, Corp. v. Sunoco, Inc. (R & M)*, 951 F. Supp. 2d 376, 381 (E.D.N.Y. 2013). *See also Valdez-Mendoza v. Jovani Fashion Ltd.* 2017 WL 519230, at *2 n.1 (E.D.N.Y. Feb. 8, 2017) (applying NYLL to wage claims where plaintiff was employed in New York and both parties relied on New York law in their papers).

vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (quoting *Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004)), *aff'd,* 2019 WL 80773 (2d Cir. Jan. 3, 2019); *see also Metro-Gem Leasing & Funding Corp. v. Dancy*, 2017 WL 3491966, at *11 (E.D.N.Y. June 19, 2017) (dismissing breach of contract claim where plaintiff failed to allege essential terms of contract or conduct constituting breach).

"The consideration to be paid under a contract is a material term." *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 610 (S.D.N.Y. 2010) (quoting *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.,* 667 F. Supp .2d 308, 326 (S.D.N.Y. 2009)). A compensation term is insufficiently definite if it cannot be "objectively determined without the need for new expressions by the parties." *Stone Key Partners LLC v. Monster Worldwide, Inc.*, 333 F. Supp. 3d 316, 334 (S.D.N.Y. 2018) (quoting *Cobble Hill Nursing Home v. Henry & Warren Corp*., 74 N.Y.2d 475, 548 N.Y.S.2d 920, 548 N.E.2d 203, 206 (1989)).

Here, plaintiff has not alleged the essential terms of the purported contract with sufficient clarity to enforce them. Most glaringly, he has failed to allege the nature of the "equity" he was to receive under the contract. Using remarkably vague terms (particularly for a senior financial services professional), plaintiff claims that Wahedna offered – and that he is now entitled to – an "equity stake" consisting of "the number of shares equal to $2.4 million based on the Company's then current valuation of $120,000,000." FAC ¶ 12. This formulation could mean anything from a grant of options with a high strike price and a long vesting schedule to the outright issuance (or transfer, from another shareholder) of unrestricted common stock. Similarly, plaintiff gives no hint

16

as to how – or when – the value of his equity stake was to be measured. Since the contours of the alleged agreement cannot be "objectively determined" from the information provided, *Stone Key Partners*, 333 F. Supp. 3d at 334, the alleged contract – as pled – is too indefinite to be enforced.[5]

## 2.    Intent to be Bound

"Absent a mutual intention to be bound, there can be no contract." *Banco Espirito Santo de Investimento*, 2003 WL 23018888, at *4 (quoting *Advanced Marine Technicians, Inc. v. Burnham Securities, Inc*., 16 F. Supp. 2d 375, 380 (S.D.N.Y.1998) (Kaplan, J.)).  Based in part on the vagueness of the parties' alleged oral agreement, defendants argue that they could not have intended to be bound until and unless they memorialized their understandings in a more detailed written agreement.  Def. Mem. at 10-12.

In our Circuit, the courts consider four factors when evaluating whether a preliminary oral agreement is enforceable in the absence of a signed writing: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been

---

[5] A contract which is too amorphous to enforce when made may, over time, take on a more definite shape through the parties' conduct and continued communication. *See*, *e.g.*, *Canet v. Gooch*, 917 F. Supp. at 992 (oral employment agreement which contained "indefinite material terms" when made regarding bonuses and equity participation became enforceable after "subsequent agreements" between the parties "established the missing terms"); *Smith v. Horsehead Indus., Inc.*,1995 WL 406024, at *5-6 (S.D.N.Y. July 10, 1995) (employer's written assurance that employee could participate in its anticipated "stock incentive program" was not too vague to enforce where the original promise was "supplemented," over time, by "oral representations made to Smith" and by multiple "drafts of equity participation plans and stock incentive agreements," which provided "some method of determining the nature of the plan and Smith's entitlement according to the provisions of that plan that is more concrete than 'wish, will and desire.'"). In the case at bar, however, plaintiff has elected to stand on his bare-bones pleading and has resisted defendants' efforts to put any meat on those bones. *See* Pl. Mem. at 2-5 (objecting to any consideration of plaintiff's Employment Agreement, defendant's Plan, or plaintiff's October 2017 stock award in connection with the pending motion). The Court is therefore limited, in its analysis, to the contract as pleaded in the FAC, which is too vague to enforce.

agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). *Accord Rubinstein v. Clark & Green, Inc.*, 395 F. App'x 786 (2d Cir. 2010); *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549 (2d Cir. 1998)). Courts regularly apply the *Winston* factors on motions brought pursuant to Rule 12(b)(6), and do not hesitate to dismiss contract claims where "the facts alleged in the [operative complaint], and the documents incorporated therein, establish that [the parties] did not intend to be bound" prior to the execution of a written agreement. *CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 804 (2d Cir. 2013) (affirming dismissal of contract claim); *see also, e.g.*, *CapLOC, LLC v. McCord*, 2018 WL 3407708, at *11 (S.D.N.Y. June 12, 2018) (finding that the "Term Sheet contemplated the execution of a more complete agreement" and granting motion to dismiss contract claim); *Cabrera Cap. Markets, LLC v. Further Lane Sec., L.P.*, 2013 WL 5462373, at *5 (S.D.N.Y. Sept. 25, 2013) ("the facts contained in the Complaint and incorporated therein by reference do not allege plausibly that the parties entered into an enforceable consent agreement").

In this case, the first *Winston* factor supports plaintiff, in that he does not allege that either party expressly reserved the right not to be bound in the absence of a writing. As to the second factor, plaintiff alleges that defendants partially performed the cash bonus term of the alleged contract – by paying the first half of the bonus, FAC ¶ 13 – but he does not allege any partial performance of the equity term.[6] This factor therefore militates in favor of the conclusion that the equity agreement was not intended to be binding until it was reduced to a writing.

---

[6] Plaintiff says that he was "advised" that he "would receive only a fraction of the promised equity," FAC ¶ 14, but he does not allege any actual grant of options, stock units, or stock.

"The third *Winston* factor examines whether the parties agreed on all material terms." *Doe v. Kogut*, 2017 WL 1287144, at *7 (S.D.N.Y. Apr. 6, 2017), *aff'd,* 2019 WL 137715 (2d Cir. Jan. 9, 2019); *see also Grgurev v. Licul*, 2016 WL 6652741, at *6 (S.D.N.Y. Nov. 10, 2016) ("courts analyzing this factor focus on whether the parties reached agreement with respect to all *material* terms.") (emphasis in original). This factor strongly favors defendants. As discussed above, the parties in this case did not even agree on the nature or source of the "equity" to be awarded to plaintiff, much less how to determine whether it was worth $2.4 million. They therefore failed to agree upon "the structure of the transaction." *Grgurev*, 2016 WL 6652741, at *6 (S.D.N.Y. Nov. 10, 2016).  Far smaller issues have led courts to refuse to enforce oral agreements. *See*, *e.g.*, *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 337-40 (S.D.N.Y. 2006) (finding that the third *Winston* factor weighed against enforceability because the term "general release" could have been construed to cover only existing claims or also future claims). The absence of any answers to the most basic questions surrounding the alleged equity terms weighs heavily against finding the parties' alleged oral agreement binding.

The fourth *Winston* factor asks whether the agreement is of a type that is ordinarily committed to writing. Courts often "look to the complexity of the transaction to determine whether the agreement is the kind ordinarily memorialized by a written agreement." *Vacco v. Harrah's Operating Co.*, 661 F. Supp. 2d 186, 204 (N.D.N.Y. 2009); *see also Grgurev*, 2016 WL 6652741, at *7 (assessing *Winston*'s fourth factor in terms of the complexity of the agreement). An award of equity in a financial services start-up is a complex transaction which is ordinarily evidenced by detailed written agreements.  *See*, *e.g.*, *Braun v. CMGI, Inc.*, 64 F. App'x 301, 303 (2d Cir. 2003) (finding that former CEO of broadcasting company was sophisticated party who could not reasonably have expected that "an options package, which both parties hoped would become very

valuable, would be fixed and made enforceable in a conversation"); *Langreich v. Gruenbaum*, 775 F. Supp. 2d 630, 638 (S.D.N.Y. 2011) (agreement that "contemplated some fairly substantial financial transactions, including the issuance of shares and registration with the SEC," was the "sort of agreement that parties normally insist be reduced to writing"); *McElroy v. Gemark Alloy Ref. Corp.*, 592 F. Supp. 2d 508, 519 (S.D.N.Y. 2008) (contract to acquire a "35% interest in a contemplated multi-million dollar venture with activities extending over a number of years" would normally be in writing). The fourth factor is thus "especially telling." *Braun*, 64 F. App'x at 303.

I recognize that the cash bonus portion of the alleged agreement was considerably simpler – and more definite – than the equity portion. However, there is no suggestion in plaintiff's pleading that the parties intended anything other than a single, integrated compensation package including both a cash bonus and some form of equity worth $2.5 million. I therefore apply the *Winston* factors to that package as a whole, and conclude that plaintiff has not plausibly alleged a mutual intention to be bound in the absence of a written agreement.

### 3.    Breach

"Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Berman*, 580 F. Supp. 2d at 202; *see also Harbor Distrib. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 215 (E.D.N.Y. 2016) (dismissing breach of contract claim for including only conclusory allegations of breach and collecting cases); *N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, 2013 WL 1500333, at *9 (S.D.N.Y. Apr. 12, 2013) (same).

Here, plaintiff Khurana has failed to plead facts which, accepted as true, would show that the Company actually breached the alleged contract. Plaintiff alleges that the second portion of the cash bonus was to be paid "in December 2017" and that his equity stake was to have been awarded "following the meeting of the Board of Directors in December of 2017" but "prior to the close of the next financing round." FAC ¶ 12. He then alleges that the Company "failed to pay the second

half of the bonus" and "did not issue the additional equity promised." *Id.* ¶¶ 13-14. Nowhere in his complaint, however, does plaintiff allege that either payment became due before he "made clear to Wahedna that he could not remain with the Company" and resigned his employment. *Id.* ¶ 15.

Since the cash payment was due "in December 2017," it did not become overdue (and defendants were not in breach) until January 1, 2018. FAC ¶ 12. In his brief, plaintiff claims that he "remained employed through December." Pl. Mem. at 12. But that allegation appears nowhere in the FAC. Since the purpose of the bonus was to "incent [plaintiff] to remain with the Company," FAC ¶ 11, plaintiff could hardly expect to receive it if he left defendants' employ before the date on which they were required to pay it.

Similarly, since the equity grant was due "prior to the close of the next financing round," FAC ¶ 12, plaintiff cannot plausibly allege a breach without alleging that the triggering event occurred, and that he remained employed through that date. However, the FAC does not state when – or whether – the next financing round closed.

Nor is plaintiff's pleading saved by his allegation that he "performed all of his obligations under the contract except as excused by Wahed's failure to perform its obligations and breach thereof." *Id.* ¶ 18. This statement is entirely conclusory and therefore insufficient to compensate for the defects outline above. *Berman*, 580 F. Supp. 2d at 202.

### 4.     Leave to Amend

Because plaintiff's well-pleaded factual allegations fail to state a plausible claim for breach of contract, Counts I and II should be dismissed.

Whether to grant leave to amend is a closer question. "Denial of leave to amend may be appropriate where, as here, the plaintiff declined an invitation to amend its complaint, even after potential defects in the complaint had been pointed out and the plaintiff has been given opportunity to cure them." *City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Co.*, 2010

WL 309009, at *2-3 (S.D.N.Y. Jan. 22, 2010). *See also In re Eaton Vance Mutual Funds Fee Litigation,* 403 F. Supp. 2d 310, 319 (S.D.N.Y. 2005) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.") (internal quotations and citation omitted), *aff'd sub nom, Bellikoff v. Eaton Vance Corp.,* 481 F.3d 110 (2d Cir. 2007). Moreover, while plaintiff asserts in general terms that he could "clarify" the equity terms on which he sues, Pl. Mem. at 11, he did not cross-move for leave to amend, and he offers no specifics as to what he might add to his contract claims. *See DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 33 (2d Cir. 2014) (affirming district court's decision to deny leave to amend where plaintiffs "failed to provide any detail as to what facts they would (or could) plead to cure their pleading deficiencies").

However, our Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n,* 464 F.3d 274, 276 (2d Cir. 2006), and generally does not require the filing of formal motions for leave to replead, so long as the plaintiff "clearly has expressed a desire to amend." *Id.* Moreover, I cannot conclude, on the slim record now before me, that the defects outlined above cannot be cured by amendment. I therefore recommend, respectfully, that both of plaintiff's contract claims be dismissed with leave to amend.

### D.    Fraud

Plaintiff's third cause of action, for fraud, arises out of the same alleged promises that form the basis of his contract claims, and seeks to recover for one of the same injuries, namely, defendants' failure to grant him "the promised equity." FAC ¶ 25-31. The only new allegation appearing in the fraud claim is the conclusory assertion that when Wahedna contracted with plaintiff in September 2017, "he had no intent of actually causing [the Company] to issue the promised equity." *Id.* ¶ 29.

It is well-settled in New York that "a fraud claim is not stated by allegations that simply duplicate, in the facts alleged and damages sought, a claim for breach of contract, enhanced only by conclusory allegations that the pleader's adversary made a promise while harboring the concealed intent not to perform it." *Presnall v. Analogic Corp.*, 2018 WL 4473337, at \*6 (S.D.N.Y. Sept. 18, 2018) (quoting *Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 62 (1st Dep't 2017)). *See also Liberty Mut. Ins. Co. v. York Hunter, Inc.*, 945 F. Supp. 742, 749 (S.D.N.Y. 1996) (Kaplan, J.) ("While a promise made without the intention to perform may be actionable, one cannot state a claim for fraud based on such a theory simply by making a conclusory assertion that the promisor did not intend to perform at the time the promise was made."); *Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*, 892 F. Supp. 89, 95 (S.D.N.Y. 1995) ("Plaintiff's general claim that LBK never intended to perform its duties under the contract with Avon does not elevate this basic claim for breach of contract to the level of deliberate fraud."); *Xiotech Corp. v. Express Data Prod. Corp.*, 11 F. Supp. 3d 225, 241 (N.D.N.Y. 2014) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 390, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) (1987)) (fraud allegations that are "merely a restatement, albeit in slightly different language, of the [] contractual obligations asserted in the cause of action for breach of contract does not transform the claim into a tort claim") (alteration in original).

Plaintiff's allegations of fraudulent intent are as conclusory as those in *Presnall* and *Lomaglio,* and therefore cannot "elevate [his] basic claim for breach of contract to the level of deliberate fraud." *Lomaglio,* 892 F. Supp. at 95. Because "there is no indication that the third cause of action is anything more than a repetition of the breach of contract claims contained elsewhere in the complaint, joined with a superficial allegation of fraud, it must be dismissed." *Id.* However, because plaintiff represents that he "can and will amend the FAC" to allege specific facts showing

that Wahena never intended to perform the alleged oral contract, Pl. Mem. at 16, I recommend that he be granted leave to do so.

### E.     NYLL § 198(1-a)

Count IV of the FAC alleges that defendants' failure to pay the second portion of plaintiff's cash bonus violated New York Labor Law § 198(1-a), entitling him to recover that $40,000, plus "another $40,000 as liquidated damages," plus his reasonable attorney's fees. FAC ¶¶ 35-37. Section 198(1-a) provides, in pertinent part, that in "any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

The Company's failure to pay the second portion of the cash bonus could not have "violated" § 198(1-a), FAC ¶ 35, because § 198(1-a) does not provide any substantive rights; it merely lists the remedies available for violations of the substantive provisions of the NYLL, which are set out elsewhere in Article 6 of the NYLL. In order to recover the remedies provided in § 198(1-a), a plaintiff must first plead and prove a violation of "the wage payment law, article 6 of the Labor Law." *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 459, 626 N.E.2d 29 (1993) (holding that attorney's fees under § 198(1-a) were not available to a plaintiff whose underlying claim for unpaid commissions was merely a "common-law contract cause of action" rather than a statutory wage claim under Article 6). *Accord Contrera v. Langer*, 314 F. Supp. 3d 562, 569 (S.D.N.Y. 2018) (quoting *Alter v. Bogoricin*, 1997 WL 691332, at *13 (S.D.N.Y. Nov. 6, 1997)) ("§ 198 does not stand alone. It sets forth the remedies available in 'actions for wage claims founded on

24

the substantive provisions of Labor Law article 6.'"); *Rosenberg v. Comprehensive Cmty. Dev. Corp.*, 1998 WL 809522, at *2 (S.D.N.Y. Nov. 19, 1998) (plaintiff's wage claim must arise under one of "the substantive provisions of article 6 of New York's Labor Law").

In their briefs, both parties treat Count IV as arising under NYLL § 193. *See* Def. Mem. at 15 ("Count IV alleges that the Company's failure to make the full bonus payment violated Section 193 of New York Labor Law"); Pl. Mem. at 14 ("These facts adequately state that Defendants breached the oral contract with Plaintiff, and violated New York Labor Law section 193.").

Section 193 prohibits an employer, with certain exceptions not relevant here, from making "any deduction from the wages of an employee." NYLL § 193(1). Although nothing in the text of that statute suggests that it engrafts a statutory remedy onto what would otherwise be a common-law contract claim for a bonus payment,[7] the New York Court of Appeals held squarely, in *Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 16, 968 N.E.2d 947, 956 (2012), that an employer's failure to pay a "guaranteed" and "nondiscretionary" bonus, which "had been earned and was vested before [plaintiff] left his job" at Kellogg, "violated Labor Law § 193 . . . and entitles Ryan to an award of attorney's fees under Labor Law § 198(1–a)." *Cf. Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 225, 738 N.E.2d 770 (2000) (holding that an employee who was offered a "discretionary" bonus "explicitly predicated" on his "continued employment status," but

---

[7] *See Malinowski v. Wall St. Source, Inc.*, 2012 WL 279450, at *3 n.5 (S.D.N.Y. Jan. 31, 2012) (quoting *Monagle v. Scholastic, Inc.*, 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007)) (concluding that an employee who was "was not paid his guaranteed bonuses for the years 2007 and 2008" had no cognizable "wage claim" under § 193, because that section "has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages").

who "resigned shortly after he received his first quarterly payment," was "not entitled to receive the remaining three payments").

The parties vigorously dispute whether the $40,000 bonus payment at issue was "guaranteed and nondiscretionary," so as to bring it within the *Ryan* rule, or "discretionary," in which case it would not be actionable under NYLL § 193.  *See* Def. Mem. at 15-16 (characterizing bonus as "discretionary"); Pl. Mem. at 13-14 ("Nowhere in the FAC does Plaintiff state the bonus was 'discretionary'"). This Court need not reach that question, because "[t]he failure of [plaintiff's] contract claim also necessarily defeats his wage claim under New York Labor Law § 193." *O'Grady v. BlueCrest Capital Mgmt. LLP*, 646 F. App'x 2, 4 (2d Cir. 2016). *See also Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 158 (2d Cir. 2012) ("the District Court properly dismissed Karmilowicz's claims under sections 191 and 193 of New York's Labor Law, because a plaintiff 'cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages'") (quoting *Tierney v. Capricorn Inv'rs, L.P.,* 189 A.D.2d 629, 632, 592 N.Y.S.2d 700, 703 (1st Dep't 1993)).

For this reason, I recommend that Count IV, like Counts I and II, be dismissed with leave to amend. Should plaintiff amend, it will not be sufficient for him to characterize the alleged bonus payment as "guaranteed," "non-discretionary," "earned," and "vested." *See Ryan*, 19 N.Y.3d at 16, 968 N.E.2d at 956. He must plead *facts* sufficient to "nudge[ ] [his] claim[ ] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, including (by way of example) facts showing that he "remain[ed] with the Company," FAC ¶ 11, through the date on which the bonus was required to be paid.

### F.    N.Y. Penal Law § 135.60

In Count V, plaintiff alleges that the corporate defendants violated a criminal coercion statute, New York Penal Law § 135.60, when their lawyer sent plaintiff's lawyer an email, on

January 9, 2018, calling plaintiff's attention to the "potential criminal liability that may attach in foreign jurisdictions should this action be pursued." FAC ¶¶ 38-45.

Section 135.60(4) makes it a third degree misdemeanor to "compel[ ] or induce[ ] a person to . . . abstain from engaging in conduct in which he or she has a legal right to engage . . . by means of instilling in him or her a fear that, if the demand is not complied with, the actor or another will . . . cause criminal charges to be instituted against him or her." In this case, it is clear from the record that the email did not succeed in compelling or inducing plaintiff to refrain from filing this lawsuit, which he did two days later. Moreover, plaintiff's demand for "damages for emotional distress" is undermined by the lack of any allegation that he suffered such distress as a result of the offending email. More fundamentally, however, Count V must be dismissed because the New York Appellate Division – to which this Court must defer on the point – has squarely held that there is no private right of action under § 135.60. *Troy v. City of New York*, 160 A.D.3d 410, 411, 70 N.Y.S.3d 842 (1st Dep't 2018) (plaintiff's "claim for coercion in violation of Penal Law § 135.60 fails because coercion is a criminal offense that does not imply a private right of action"); *see also Minnelli v. Soumayah,* 41 A.D.3d 388, 839 N.Y.S.2d 727 (1st Dep't. 2007)) ("extortion and attempted extortion" under New York Penal Law §§ 155.05[2][e] and 110.00 "do not imply a private right of action").[8]

---

[8] Plaintiff suggests that Abduul-Basser's email also violated former Disciplinary Rule 7-105 under the New York Code of Professional Responsibility (now codified as Rule 3.4(e) of the New York Rules of Professional Conduct), which states that a New York attorney shall not "threaten to present criminal charges solely to obtain an advantage in a civil matter." *See* FAC ¶ 43; Pl. Mem. at 8. But plaintiff is not suing Abdul-Basser; he is suing Wahed LLC and Wahed Inc., neither of which is a New York attorney. Moreover, "there is no private right of action against an attorney or law firm for violations of the Code of Professional Responsibility or disciplinary rules." *Weinberg v. Sultan*, 142 A.D.3d 767, 769, 37 N.Y.S.3d 13, 15 (1st Dep't 2016) (collecting cases); *see also Karas v. Katten Muchin Zavis Rosenman*, 2006 WL 3635330, at *2 (S.D.N.Y. Dec. 12, 2006) ("Generally, pursuant to New York law, a violation of a disciplinary rule does not generate

In his opposition brief, plaintiff relies on a trial court decision, *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc*., 2006 WL 5325734, at *5 (Sup. Ct. N.Y. Co. Feb. 17, 2006), which declined to grant summary judgment to defendants on plaintiffs' claim of "tortious interference with prospective business relations." Plaintiff Khurana has not pleaded a claim for tortious interference in connection with Abduul-Basser's email. Nor could he. As the Appellate Division explained in the same case – when dismissing the tortious interference claim – the "alleged tortious conduct" must be "directed at third parties." *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 41 A.D.3d 269, 270, 838 N.Y.S.2d 536, 538 (1st Dep't 2007); *see also Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 818 N.E.2d 1100, 1104 (2004) ("conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship"). In this case, the email of which plaintiff complains was directed at him, rather than at any party with which he had – or sought – a business relationship. Count V should therefore be dismissed with prejudice.

### G.    NYLL § 215

In Count VI, plaintiff seeks damages for retaliation under NYLL § 215. FAC ¶¶ 46-53. As relevant here, § 215(1)(a) states that an employer may not "threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter" or has "otherwise exercised rights protected under this chapter." NYLL § 215(1)(a)(iii), (vii). Plaintiff plausibly alleges that by sending a prelitigation letter and draft complaint (containing a claim under NYLL § 198(1-a)), he qualified for the protection of § 215, *see* FAC ¶¶ 52, and that the Abduul-Basser email, excerpted in the FAC at ¶ 49, was sent in response to that protected activity.

---

a cause of action."), *aff'd sub nom. Karas v. Katten Muchin Rosenman LLP*, 2009 WL 38898 (2d Cir. Jan. 8, 2009) (internal quotation and citation omitted).

Defendants seek the dismissal of Count VI on the ground that plaintiff has identified no "injury in fact" as a result of the alleged retaliation and therefore lacks standing to sue. *See* Def. Mem. at 18 ("all that is alleged is the receipt of a single email, which Plaintiff's counsel evidently ignored"); Def. Reply Mem. at 6 ("the FAC is devoid of *any* allegations setting forth *any* injury that Plaintiff suffered as a result of the communication") (emphasis in the original). Plaintiff responds that "threatening legal action against an employee" (or, in this case, an ex-employee) is a "well-recognized form of adverse action" that can support a claim under § 215. Pl. Mem. at 19.

As to standing, plaintiff is correct. "To satisfy the 'irreducible constitutional minimum of standing,' a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). To establish a cognizable injury in fact, a plaintiff must show that he has suffered "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Ctr. for Food Safety v. Price*, 2018 WL 4356730, at *4 (S.D.N.Y. Sept. 12, 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). At the pleading stage, "general factual allegations" of injury may suffice" for standing purposes. *Id.* at *3 (quoting *Lujan*, 504 U.S. at 560). Abduul-Basser's email, which could be interpreted to threaten criminal consequences abroad should plaintiff pursue this action, was both "concrete" and "particularized."

Moreover, the statute explicitly reaches threats – if otherwise cognizable – as well as fully executed retaliatory actions. *See*, *e.g.*, *Perez v. Jasper Trading, Inc.*, 2007 WL 4441062, at *3 (E.D.N.Y. Dec. 17, 2007) (plaintiffs adequately pleaded a retaliation claim where their employers allegedly "threatened to contact governmental and immigration authorities if the plaintiffs

continued to demand just compensation," and also threatened "bodily harm"); *Aponte v. Modern Furniture Mfg. Co., LLC*, 2016 WL 5372799, at \*18 (E.D.N.Y. Sept. 26, 2016) (denying summary judgment to defendants on plaintiff Lazzo's retaliation claim after Lazzo testified that defendant Kearny "told him that 'immigration would take me and my son away because I had worked with different names . . . and he said that his attorney would go against my son'"). Similarly, the fact that a particular plaintiff was *not* dissuaded from suing (a fact which is necessarily present in every litigated retaliation case) cannot, standing alone, deprive the plaintiff of standing to bring that case.

The more difficult question is whether plaintiff has adequately pleaded that the Abduul-Basser email constitutes an "adverse employment action," *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011) (quoting *Higueros v. New York State Catholic Health Plan, Inc.,* 630 F. Supp. 2d 265, 269 (E.D.N.Y. 2009)); that is, an "employment action disadvantaging the plaintiff." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (quoting *Mullins v. City of N. Y.,* 626 F.3d 47, 53 (2d Cir. 2010)). Generally speaking, the test is met if the conduct complained of "might have 'dissuaded a reasonable worker from making or supporting [similar] charge[s].'" *Mullins*, 626 F.3d at 53 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (alterations in the original).

In making that determination, however, "[c]ontext matters." *Aponte*, 2016 WL 5372799, at \*15 (quoting *Burlington*, 548 U.S. at 57). And in the context of a claim for "post-employment" retaliation, a "relatively narrow" range of conduct "has been "recognized in this Circuit as potential unlawful retaliation." *Jian Zhong Li v. Oliver King Enterprises, Inc.*, 2015 WL 4643145, at \*3 (S.D.N.Y. Aug. 4, 2015). That narrow range includes instituting "bad faith or groundless counterclaims" or other "bad faith litigation" against the former employee. *Id.* (collecting cases); *see also Paz v. Piedra*, 2012 WL 12518495, at \*9 (S.D.N.Y. Jan. 12, 2012) (assuming, without

deciding, that the filing of a "wholly meritless" criminal complaint against plaintiff "shortly after [she] filed this law suit" constituted a violation of § 215), *report and recommendation adopted*, *Paz v. Pedra*, No. 09-CV-3977 (LAK), at Dkt. No. 133 (S.D.N.Y. Feb. 1, 2012) and Dkt. No. 185 (S.D.N.Y. April 3, 2015) (Kaplan, J.); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) (granting summary judgment for plaintiffs on their retaliation claim where the defendant employer filed "completely baseless" counterclaims with "no credible evidentiary support"); *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 132-33 (W.D.N.Y. 2003) (defendant's "actions after learning of the lawsuit, *i.e.,* reporting plaintiffs to the INS and making baseless allegations to the government that plaintiffs are terrorists, constitute an adverse employment action").

In this case, plaintiff has given the Court virtually no "context." The FAC quotes two sentences from an attorney's email, without explaining Abduul-Basser's reference to the "complaint notices" that were apparently attached to the original email, the "international nature of this dispute," or the connection between this action and the "potential criminal liability in foreign jurisdictions." Moreover, although the snippet provided *could* be read to suggest that criminal complaints had been (or would be) filed against plaintiff, the language is also susceptible of an alternate reading: that there is a risk of criminal liability for defendants (or others) should this civil action proceed.

"While it is true that on a motion to dismiss a court draws all reasonable inferences in the plaintiff's favor, a claim for relief must be more than merely possible. It must be plausible." *City of Westland*, 129 F. Supp. 3d at 75. "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' or where there are 'obvious alternate explanations,' [t]hat standard is not met." *Id* (quoting *Iqbal*, 566 U.S. at 679, and *Hayden v.*

*Paterson*, 594 F.3d 150, 167 (2d Cir. 2010)) (final alternation added).  In this case, plaintiff has the necessary information – the email was sent to his lawyer – but has chosen not to provide the factual context that would permit this Court to determine whether he has plausibly alleged that Abduul-Basser's email constituted an adverse employment action calculated to "dissuade[ ] a reasonable worker" from filing suit. *Mullins*, 626 F.3d at 53.

Nor has plaintiff alleged that the potential criminal claims (if asserted against him) would be "groundless" or brought in "bad faith." *Jian Zhong Li*, 2015 WL 4643145, at *3. *Cf. Paz*, 2012 WL 12518495, at *9 (S.D.N.Y. Jan. 12, 2012) ("wholly meritless" criminal complaint); *Torres*, 628 F. Supp. 2d at 473 ("completely baseless" counterclaims); *Centeno-Bernuy*, 302 F. Supp. 2d at 132 ("baseless" allegations that plaintiff were terrorists). *See also Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 244 (S.D.N.Y. 2017) (holding, on cross-motions to dismiss and to amend, that employer's alleged conduct in opposing plaintiff's application for unemployment benefits "on the ground that he had committed a crime against Saks" did not rise to the level of unlawful retaliation).  In this case, plaintiff does not say anything about the merits of the potential criminal claims, much less allege facts which, accepted as true, would demonstrate that defendants' "threat of criminal prosecution," FAC ¶ 52, was baseless.

Finally, I note that plaintiff fails to allege that he served notice of his retaliation claim upon the Attorney General of New York before filing that claim, as required by NYLL § 215(2)(b). The courts are divided as to whether pre-suit notification is a condition precedent to any claim for retaliation, with most concluding that "late notice" to the Attorney General is not fatal. *See York Romero v. Bestcare, Inc.*, 2018 WL 1702001, at *4 (E.D.N.Y. Feb. 28, 2018) (collecting cases), *report and recommendation adopted,* 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018).  In this case, however, there is no indication that plaintiff ever provided the required notice.

For these reasons, Count VI should also be dismissed, albeit with leave to amend. I further recommend that plaintiff be expressly directed to comply with NYLL § 215(2) before re-filing his retaliation claim. *See Romero*, 2018 WL 1702001, at \*4 (directing plaintiff to "notify the State Attorney General of her retaliation claim and file proof of such notice immediately thereafter").

## III.   CONCLUSION

For the reasons stated above, I respectfully recommend that defendants' motion be GRANTED; that Counts I, II, II, IV, and VI be DISMISSED with leave to amend; and that Count V be DISMISSED WITH PREJUDICE.

Dated: New York, New York
February 26, 2019

**BARBARA MOSES**
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Lewis A. Kaplan at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Kaplan. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).