# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARSH KHURANA,<br><br>    Plaintiff,<br><br>  v.<br><br>WAHED INVEST, LLC; WAHED INC.;<br>and JUNAID WAHEDNA, an individual,<br><br>    Defendants. | Civil Action No. 1:18-cv-00233 |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

---

David B. Lichtenberg, Esq.
FISHER & PHILLIPS LLP
430 Mountain Avenue, Suite 303
Murray Hill, New Jersey 07974
Tel.: (908) 516-1050
Fax: (908) 516-1051
E-mail: dlichtenberg@fisherphillips.com
Attorneys for Defendants
Wahed Invest, LLC, Wahed Inc., and Junaid
Wahedna

Of Counsel:
David B. Lichtenberg, Esq.

On the Brief:
David J. Treibman, Esq.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

STANDARD OF REVIEW .............................................................................. 4

LEGAL ARGUMENT...................................................................................... 5

I.     The Second Amended Complaint Fails to State a Claim for Breach
of Contract (Count I)............................................................................. 5

       A.     The Promise to Pay Plaintiff a Bonus Was Unsupported by
Consideration. .......................................................................... 5

       B.     The Stock Issuance Allegations Fail to State a Breach of
Contract Claim. ........................................................................ 8

             1.     There Was No Intent to Be Bound................................. 8

             2.     There Was No Breach. ................................................. 10

II.     The Second Amended Complaint Fails to State a Claim for Specific
Performance (Count II). ...................................................................... 11

III.     The Second Amended Complaint Fails to State a Claim for Fraud
(Count III). ......................................................................................... 12

       A.     The Second Amended Complaint Fails to Allege a Material
False Representation. ............................................................... 13

       B.     The Second Amended Complaint Fails to Allege Reliance...................... 14

       C.     The Damages Plaintiff Seeks in the Fraud Count Are the
Same as the Damages He Seeks in the Contract Count. ........................... 16

IV.     The Second Amended Complaint Fails to State a New York Labor
Law Claim (Count IV). ....................................................................... 17

V.     The Second Amended Complaint Fails to State a Claim for
Retaliation (Count V)........................................................................... 18

       A.     Plaintiff's Allegations Are Insufficient................................... 18

i

B.     Plaintiff Has Failed to File Proof of Notice to the State Attorney General.......................................................................................... 19

CONCLUSION............................................................................................................................ 20

FPDOCS 35613266.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdille v. Ashcroft*,
  242 F.3d 477 (3d Cir. 2001) ................................................................................. 19

*Beitner v. Becker*,
  34 A.D.3d 406, 824 N.Y.S.2d 155 (2d Dep't 2006) .............................................. 5

*Belcastro v. Burberry Ltd.*,
  No. 16-1080, 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017) ................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 11

*Black Diamond S.S. Corp. v. Robert Stewart & Sons, Ltd.*,
  336 U.S. 386 (1949) ............................................................................................. 19

*Boyce v. Soundview Tech. Grp.*,
  464 F.3d 376 (2d Cir. 2006) ................................................................................ 12

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
  98 F.3d 13 (2d Cir. 1996) .................................................................................... 13

*Budow Sales Corp. v. G. Holdings Corp.*,
  171 A.D.3d 655, ___ N.Y.S.3d ___, 2019 WL 1905758 (1st Dep't 2019) ........... 14

*CAC Grp. v. Maxim Grp.*,
  523 F. App'x 802 (2d Cir. 2013) ........................................................................... 9

*Case v. Clivilles*,
  216 F. Supp. 3d 367 (S.D.N.Y. 2016) ................................................................. 15

*Clark v. Bank of New York*,
  185 A.D.2d 138, 585 N.Y.S.2d 749 (1st Dep't 1992) ........................................ 6, 7

*De Vito v. Pokoik*,
  150 A.D.2d 331, 540 N.Y.S.2d 858 (2d Dep't 1989) ........................................ 7, 17

*Deutsche Asset Mgmt., Inc. v. Callaghan*,
  No. 01-4426, 2004 WL 758303 (S.D.N.Y. Apr. 7, 2004) .................................... 16

*Duckett v. Williams*,
  86 F. Supp. 3d 268 (S.D.N.Y. 2015) ................................................................... 15

*Fallman v. Hotel Insider Ltd*,
   No. 14-10140, 2016 WL 316378 (S.D.N.Y. Jan. 15, 2016) ....................................................19

*Fero v. Excellus Health Plan, Inc.*,
   236 F. Supp. 3d 735 (W.D.N.Y. 2017) ...................................................................................15

*Ferrostaal, Inc. v. M/V Sea Phoenix*,
   No. 03-0164, 2004 WL 3304655 (D.N.J. Dec. 14, 2004),
   *aff'd*, 447 F.3d 212 (3d Cir. 2006) .......................................................................................19

*Fin. Structures Ltd. v. UBS AG*,
   77 A.D.3d 417, 909 N.Y.S.2d 45 (1st Dep't 2010) ...............................................................17

*Fleming v. Laakso*,
   No. 18-1527, 2019 WL 959521 (S.D.N.Y. Feb. 5, 2019)......................................................11

*Gallagher v. Savarese*,
   No. 99-4181, 2001 WL 1382581 (S.D.N.Y. Nov. 7, 2001).....................................................7

*Genger v. Genger*,
   76 F. Supp. 3d 488 (S.D.N.Y. 2015),
   *aff'd*, 663 F. App'x 44 (2d Cir. 2016)....................................................................................5

*Gorman v. Fowkes*,
   97 A.D.3d 726, 949 N.Y.S.2d 96 (2d Dep't 2012) ................................................................14

*Hughes v. Standard Chartered Bank, PLC*,
   No. 09-4595, 2010 WL 1644949 (S.D.N.Y. Apr. 14, 2010) ...................................................7

*J.E. Morgan Knitting Mills, Inc. v. Reeves Bros., Inc.*,
   243 A.D.2d 422, 663 N.Y.S.2d 211 (1st Dep't 1997) ...........................................................17

*Joy v. Hay Grp.*,
   No. 02-4989, 2003 WL 22118930 (N.D. Ill. Sept. 11, 2003) ................................................19

*Korff v. Corbett*,
   155 A.D.3d 405, 65 N.Y.S.3d 498 (1st Dep't 2017) ...............................................................5

*Kovens v. Paul*,
   No. 04-2238, 2009 WL 562280 (S.D.N.Y. Mar. 4, 2009),
   *aff'd*, 358 F. App'x 228 (2d Cir. 2009)..................................................................................12

*Langreich v. Gruenbaum*,
   775 F. Supp. 2d 630 (S.D.N.Y. 2011)......................................................................................9

*In re Lehman Bros. Sec. & ERISA Litig.*,
   903 F. Supp. 2d 152 (S.D.N.Y. 2012) ...................................................................................11

iv

*LiveIntent, Inc. v. Naples*,
   293 F. Supp. 3d 433 (S.D.N.Y. 2018)......................................................................12

*Lucente v. IBM Corp.*,
   310 F.3d 243 (2d Cir. 2002)..........................................................................11, 12

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*,
   165 A.D.3d 108, 84 N.Y.S.3d 157 (1st Dep't 2018) .............................................16

*Miller v. HSBC Bank U.S.A., N.A.*,
   No. 13-7500, 2015 WL 585589 (S.D.N.Y. Feb. 11, 2015).....................................14

*Miramax Film Corp. v. Abraham*,
   No. 01-5202, 2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003).................................16

*Munsell v. La Brasserie Molson Du Quebec Limitee*,
   623 F. Supp. 100 (E.D.N.Y. 1985) .....................................................................19

*Negrete v. Citibank, N.A.*,
   187 F. Supp. 3d 454 (S.D.N.Y. 2016),
   *aff'd*, 759 F. App'x 42 (2d Cir. 2019).................................................................15

*NML Capital, Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012)..............................................................................11

*O'Grady v. BlueCrest Capital Mgmt. LLP*,
   646 F. App'x 2 (2d Cir. 2016) .......................................................................18, 19

*PetEdge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017)..................................................................13

*Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*,
   No. 07-10490, 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009)..................................15

*Pugni v. Giannini*,
   163 A.D.3d 1018, 83 N.Y.S.3d 491 (2d Dep't 2018) ...........................................17

*Selvam v. Experian Info. Solutions, Inc.*,
   No. 12-1828, 2013 WL 4547454 (E.D.N.Y. Aug. 28, 2013) ...................................9

*Silica Tech, L.L.C. v. J-Fiber, GmbH*,
   No. 06-10293, 2009 WL 2579432 (D. Mass. Aug. 19, 2009) ................................19

*Spinelli v. NFL*,
   903 F.3d 185 (2d Cir. 2018)...............................................................................13

v

*SRM Global Master Fund L.P. v. Bear Stearns Co.*,
 829 F.3d 173 (2d Cir. 2016),
 *cert. denied*, 137 S.Ct. 2326 (2017) ........................................................14

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*,
 No. 11-7426, 2012 WL 3065929 (S.D.N.Y. July 25, 2012)....................16

*Umscheid v. Simnacher*,
 106 A.D.2d 380, 482 N.Y.S.2d 295 (2d Dep't 1984) ..............................5

*United Resource Recovery Corp. v. Ramko Venture Mgmt., Inc.*,
 584 F. Supp. 2d 645 (S.D.N.Y. 2008)........................................................5

*Vanacore v. Vanco Sales, LLC*,
 2017 WL 2790549 (S.D.N.Y. June 27, 2017) ........................................11

*Wall v. CSX Transp., Inc.*,
 471 F.3d 410 (2d Cir. 2006)........................................................12, 13, 14

*Walrus Master Fund Ltd. v. Citigroup Global Mkts., Inc.*,
 No. 08-2404, 2009 WL 928289 (S.D.N.Y. Mar. 30, 2009)....................15

*Winston v. Mediafare Entm't Corp.*,
 777 F.2d 78 (2d Cir. 1985)........................................................................9

**Statutes**

New York General Obligations Law §5-1105 .................................................5

New York Labor Law §193 .......................................................................2, 17

New York Labor Law §215 .......................................................................2, 18

New York Labor Law §215(2)(b) ..................................................................20

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................................14

Fed. R. Civ. P. 9(b) ........................................................................................14

Fed. R. Civ. P. 12(b)(6)..................................................................2, 11, 15, 20

FPDOCS 35613266.1

## INTRODUCTION

On February 26, 2019, this Court issued a Report and Recommendation ("R&R," Doc. 32) recommending that the Honorable Lewis A. Kaplan, U.S.D.J., dismiss Plaintiff's six-count First Amended Complaint ("FAC," Doc. 8) with leave to replead five of the counts.  Judge Kaplan adopted the Court's R&R on March 29, 2019.  (Order, Doc. 34.)  Plaintiff filed his Second Amended Complaint ("SAC," Doc. 35) on May 6, 2019.  The new iteration of Plaintiff's pleading remains fatally deficient.

Count I of the SAC attempts to state a claim for breach of contract, based on an allegation that Plaintiff did not receive a portion of a promised bonus, and on an alleged unfulfilled promise to issue Plaintiff additional stock in Defendant Wahed.[1]  Count I fails to state a claim because the alleged promise of a bonus was not supported by consideration, but rather was based on Plaintiff's supposedly "thrilling" past performance; because the alleged promise to issue Plaintiff additional stock was not in writing, as was required in order to create a binding contract; and because even if the promise had been a binding contract, there are no allegations showing it was breached.

Count II of the SAC attempts to state a claim for specific performance of the alleged contract to issue Plaintiff additional stock in Wahed.  It fails to state such a claim, because the underlying alleged contract did not exist, because even if it did was not breached, and because monetary damages would be adequate, since the SAC itself offers a dollar valuation of the stock Plaintiff alleges he was owed.

Count III of the SAC attempts to state a claim for fraud arising from Plaintiff's failure to receive the allegedly promised additional stock.  Count III fails to state a fraud claim, because it

---

[1] "Wahed" or the "Company" is the collective term the SAC uses to refer to Defendants Wahed Invest, LLC, and Wahed Inc.  For simplicity's sake, this brief employs Plaintiff's nomenclature.  The only other Defendant is an individual, Junaid Wahedna (referred to herein as "Wahedna").

FPDOCS 35613266.1

simply repeats Plaintiff's attempt to state a contract claim arising from his failure to receive the additional stock.

Count IV of the SAC attempts to state a claim under §193 of the New York Labor Law arising from Plaintiff's failure to receive a portion of the allegedly promised bonus.  This Count fails to state a claim because, as the Court has already held, it stands or falls with Plaintiff's failed attempt to state a breach of contract claim.

Count V of the SAC attempts to state a claim for retaliation under New York Labor Law §215, arising from cease and desist letters Plaintiff received from attorneys in India and the United Arab Emirates.  Plaintiff alleges those letters give rise to a retaliation claim because they threatened legal action that was "baseless" under Indian and UAE law.  Count V fails to state a claim, because Plaintiff has the burden of establishing the content of the law of foreign countries, but cites no Indian or UAH legal authority to substantiate his bald assertion of "baselessness."

All five counts of the SAC accordingly fail to state a claim upon which relief can be granted.  The SAC should therefore be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(6).  Dismissal this time should be with prejudice, since Plaintiff has already attempted and failed to state the same claims twice; the conclusion is consequently unavoidable that a third attempt would be futile.

## STATEMENT OF FACTS[2]

Wahed hired Plaintiff as Chief Compliance Officer in May 2017.  Plaintiff reported to the Chief Executive Officer, Defendant Wahedna, who was also Wahed's majority shareholder.  (SAC ¶¶8, 17.)  Plaintiff's offer letter provided that he would be granted an option to purchase 0.6% of

---

[2] Defendants assume, for purposes of this motion only, that the adequately-pled factual allegations of the Second Amended Complaint are true.  (*See* R&R at 7-10.)

2

Wahed's common stock.  (SAC ¶8.)  Plaintiff and Wahedna subsequently agreed that he would be granted restricted shares of common stock instead.  On October 12, 2017, Wahed's Board of Directors ("Board") approved a grant of 11,600 restricted shares.  There was "requisite follow up paper work" necessary for the grant to be effective, which "was signed by Wahedna on behalf of the Company on October 23, 2017."  (SAC ¶9.)

The SAC alleges that Wahedna was "thrilled" with Plaintiff's performance.  (SAC ¶13.) Because of that, Wahedna held a meeting with Plaintiff in early September 2017 at the London office of Wahed's "primary investor," where Wahedna "promised that the Company would pay Plaintiff a cash bonus of $80,000, with $40,000 payable immediately and $40,000 paid in December 2017, i.e. on or before December 31, 2017.  Wahedna placed *no conditions on the bonus*, save for the *expectation* that Plaintiff be employed through and including the bonus payout date." (SAC ¶14; emphasis added.)  Wahed paid Plaintiff the first $40,000 on or about September 20, 2017.  (SAC ¶15.)

The SAC alleges that at the same early September 2017 London meeting where Wahedna allegedly promised Plaintiff a bonus, the two also "discussed" increasing Plaintiff's equity stake in Wahed.  (SAC ¶13.)  On September 29, 2017, Wahedna met with Plaintiff at a restaurant in New Jersey "to discuss [Plaintiff's] position and compensation in an effort to incent him to remain with the Company."  (SAC ¶16.)  Wahedna "stated that the Company would grant 1.4%" of the Company's outstanding stock to Plaintiff, which would bring Plaintiff's total equity stake in Wahed to 2%, and the total value of his holdings to $2.4 million, "based on the Company's then current valuation of $120,000,000."  (SAC ¶17.)

While Wahedna "represented to Plaintiff that he would cause the decision to grant such equity to be approved by the Board at its December 12, 2017 meeting," he "promised" only that

3

"the equity would be issued prior to the close of the next financing round."  (SAC ¶17.)  In return, Plaintiff "agreed to continue to work for Wahed."  (SAC ¶¶18, 45.)  Plaintiff's "expectation" was that the stock would issue on the December 12 date of the Board meeting and the "requisite" and "customary paperwork associated with the transfer of the restricted stock to Plaintiff would be sent to him following the meeting ... at which time his restricted stock would be approved and issued." (SAC ¶¶9, 17.)

Plaintiff was disappointed in his "expectation."  At the Board's December 12, 2017 meeting it approved the issuance to Plaintiff of only of 0.15% of the Company's outstanding shares.  (SAC ¶20.)  According to Plaintiff, Wahedna texted him in explanation that "the only reason I insisted on them even considering giving you equity now **before the fundraise. . 4 months before april**, is because I promised you."  (SAC ¶21; some emphasis omitted.)

Plaintiff did not receive the second $40,000 of his bonus by the anticipated date of December 31, 2017, even though, according to the Complaint, Plaintiff was still employed by Wahed on that date.  (SAC ¶22.)

Plaintiff told Wahedna "he could not remain with the Company," and Wahedna "quite readily agreed that Plaintiff should leave the Company."  (SAC ¶23.)  On January 9, 2018, Wahed sent Plaintiff a letter informing him he had resigned effective December 30, 2017.  Plaintiff denies that was the effective date of his resignation and insists he was employed through January 5, 2018. (SAC ¶24.)

## STANDARD OF REVIEW

Defendants rely on the Court's statement of the standard of review in its February 26, 2019 Report and Recommendation.  (R&R at 7-10.)

## LEGAL ARGUMENT

I.     **The Second Amended Complaint Fails to State a Claim for Breach of Contract (Count I).**

A.     **The Promise to Pay Plaintiff a Bonus Was Unsupported by Consideration.**

"All contracts must be supported by consideration, consisting of a benefit to the promisor or a detriment to the promisee." *Beitner v. Becker*, 34 A.D.3d 406, 407, 824 N.Y.S.2d 155, 156 (2d Dep't 2006); *accord, e.g., Genger v. Genger*, 76 F. Supp. 3d 488, 498 (S.D.N.Y. 2015), *aff'd*, 663 F. App'x 44 (2d Cir. 2016). The general rule is that "past consideration is not consideration, because the promise was not induced by the consideration." *United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 656 (S.D.N.Y. 2008). Put another way, "since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise." *Umscheid v. Simnacher*, 106 A.D.2d 380, 381, 482 N.Y.S.2d 295, 297 (2d Dep't 1984); *accord, e.g., Korff v. Corbett*, 155 A.D.3d 405, 408, 65 N.Y.S.3d 498, 502 (1st Dep't 2017). New York General Obligations Law §5-1105 makes an exception to this rule "where the past consideration is explicitly recited in a writing." *Korff*, 155 A.D.3d at 408, 65 N.Y.S.3d at 502.[3] "[T]he writing must contain an unequivocal promise to pay a sum certain, at a date certain, and must express consideration for the promise." *Umscheid*, 106 A.D.2d at 381, 482 N.Y.S.2d at 381. "[T]he description of the consideration must not be 'vague' or 'imprecise,' nor may extrinsic evidence be employed to assist in understanding the consideration." *Korff*, 155 A.D.3d at 408, 65 N.Y.S.3d at 502.

---

[3] General Obligations Law §5-1105 provides: "A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed."

Wahedna's alleged promise to Plaintiff of an $80,000 bonus was unsupported by consideration. According to the SAC, Wahedna made the promise because he was "thrilled" with Plaintiff's performance. (SAC ¶13.) Moreover, "Wahedna placed *no conditions on the bonus*, save for the *expectation* that Plaintiff be employed through and including the bonus payout date" of December 31, 2017. (SAC ¶14; emphasis added.) The promise of a bonus, therefore, was in return for a job well done; that is, for past consideration. Nor does the SAC allege that the promise was made in writing. Assuming the SAC's allegations are true, therefore, Plaintiff's receipt of only half the promised bonus cannot give rise to a breach of contract claim, because there was no contract.

*Clark v. Bank of New York*, 185 A.D.2d 138, 585 N.Y.S.2d 749 (1st Dep't 1992), is closely analogous. There, the plaintiff was an investment banker. His supervisor informed him he would be receiving a $60,000 bonus, $30,000 to be paid in February 1989, and another $30,000 on May 1, 1989. The plaintiff received the first $30,000 as promised. However, on April 25, 1989, the plaintiff submitted his resignation, effective May 10, 1989, nine days after the second $30,000 installment was due. When plaintiff left the bank on May 10, he had not been paid the second installment, and eventually sued. After a trial, the jury found for plaintiff, and the trial court entered judgment for him. The defendants appealed, and the Appellate Division reversed and directed entry of judgment for the defendants.

The court explained that the promised bonus, even if construed as a "performance bonus," would have "been based upon past consideration since it was for the purpose of rewarding [plaintiff] for work which he had already performed." *Id.*, 185 A.D.2d at 140, 585 N.Y.S.2d at 751. Because the writing plaintiff relied on was inadequate, he did not qualify for the General Obligations Law exception, and the trial court should have granted defendants' motion for

6

judgment at the close of all the evidence.  *Id.* 185 A.D.2d at 139, 141, 585 N.Y.S.2d at 750, 751;

*see also, e.g., Hughes v. Standard Chartered Bank, PLC*, No. 09-4595, 2010 WL 1644949, at \*11

(S.D.N.Y. Apr. 14, 2010) (noting that "even if the amended complaint had alleged that plaintiff's

past performance of his duties constituted consideration for the promise of a bonus, the pleading

would be deficient because it does not allege that there was a written agreement memorializing the

promise").

Similarly, in *Gallagher v. Savarese*, No. 99-4181, 2001 WL 1382581 (S.D.N.Y. Nov. 7,

2001), Gallagher, a boxing trainer, was allegedly "instrumental" in introducing Savarese, a boxer,

to an individual named Pilevsky, who signed a management agreement with Savarese to whom he

agreed to pay a $350,000 signing bonus.  Savarese, like Wahedna here, was thrilled, or as Savarese

put it, "overjoyed," and told Gallagher, "I'll give you 10% for getting me the $350,000.  Thank

you."  *Id.* at \*5.  Nothing was in writing, but based on the promise of 10%, Gallagher claimed

entitlement to a $35,000 bonus.  The court rejected his claim.  "This promise is not enforceable

because a promise derived from past consideration is not actionable in the absence of a writing.

According to plaintiff's own papers, Savarese agreed to pay Gallagher only *after* Gallagher had

already performed.  Therefore plaintiff's claim for the bonus must fail."  *Id.* (citing N.Y. Gen.

Oblig. Law §5-1105; *Clark, supra*; emphasis added.)

Under New York law, therefore, "[a] promise to pay an employee a bonus which does not

obligate the employee to do or forego doing something that he was not otherwise obligated to do

is a mere gratuity, and unenforceable."  *De Vito v. Pokoik*, 150 A.D.2d 331, 332, 540 N.Y.S.2d

858, 860 (2d Dep't 1989) (rejecting plaintiff's claim that he was entitled to the unpaid balance of

a bonus "promised to him by the defendant in connection with his duties as manager of the

FPDOCS 35613266.1

'Alligator Disco'").  Thus, to the extent Plaintiff's attempt to state a contract claim is based on the unpaid balance of his bonus, it fails as a matter of law and Count I of the SAC should be dismissed.

### B.     The Stock Issuance Allegations Fail to State a Breach of Contract Claim.

#### 1.     There Was No Intent to Be Bound.

The allegations concerning Wahedna's purported promise to issue Plaintiff additional stock in Wahed also fail to state a contract claim, for reasons similar to those the Court identified in its February 26 R&R recommending dismissal of the FAC.  The Court observed there that "[a]bsent a mutual intent to be bound, there can be no contract."  (R&R at 17, quoting *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, at *4 (S.D.N.Y. Dec. 22, 2003), quoting *Advanced Marine Technicians, Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 380 (S.D.N.Y. 1998) (Kaplan, J).)  And like the FAC, the SAC demonstrates the parties "could not have intended to be bound until and unless they memorialized their understandings in a ... written agreement."  (R&R at 17.)

Courts consider four factors in evaluating whether an oral agreement is enforceable in the absence of a signed writing:  "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."  (R&R at 17-18, quoting *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).)  These are commonly referred to as the "*Winston* factors."  (R&R at 18.)

With respect to the first *Winston* factor, while strictly speaking the SAC does not allege the parties "expressly reserved" a right not to be bound in the absence of a writing, the pleading shows it was their mutual understanding that a writing was necessary; Plaintiff admits it was both "customary" and "requisite" for the Board to approve and formalize the issuance of stock in

8

writing.  (SAC ¶¶9, 17.)  The first *Winston* factor accordingly weighs against finding an intent to be bound.  *See, e.g., Winston*, 777 F.2d at 81 (no intent to be bound where "[a]though neither party expressly reserved the right not to be bound prior to the execution of a document, language in the correspondence does reveal such an intent"); *CAC Grp. v. Maxim Grp.*, 523 F. App'x 802, 804 (2d Cir. 2013) (no intent to be bound where "both parties understood that the 'deal' would be effectuated by 'documents'"); *Selvam v. Experian Info. Solutions, Inc.*, No. 12-1828, 2013 WL 4547454, at *4 (E.D.N.Y. Aug. 28, 2013) (no intent to be bound where "both parties understood that settlement would be effectuated by written documentation and subject to further review"); *Langreich v. Gruenbaum*, 775 F. Supp. 2d 630, 636 (S.D.N.Y. 2011) (no intent to be bound where though there is no "evidence of statements" indicating "whether the parties were prepared to bind themselves without a writing," the nature of the agreement "involved issuance of stock and registration of both new and old stock" and "it would have been entirely reasonable for the parties to assume that additional terms might be needed to iron out procedural, and possibly substantive, issues").

The second *Winston* factor weighs against finding an intent to be bound, because there is no allegation that any portion of the allegedly promised stock was issued.

Moreover, the Court has already held that the fourth factor cannot be met by Plaintiff.  "An award of equity in a financial services start-up is a complex transaction which is ordinarily evidenced by detailed written agreements."  (R&R at 19; citing cases.)  "The fourth factor is thus 'especially telling'" against a finding that the parties intended to be bound without a writing.  (R&R at 20, quoting *Braun v. CMGI, Inc.*, 64 F. App'x 301, 303 (3d Cir. 2003) (noting "[a] sophisticated party such as [plaintiff] could not reasonably have believed that an options package, which both

parties hoped would become very valuable, would be fixed and made enforceable in a conversation").)

Application of the *Winston* factors accordingly shows "that [P]laintiff has not plausibly alleged a mutual intention to be bound in the absence of a written agreement."  (R&R at 20.)

### 2. There Was No Breach.

As in the FAC, Plaintiff in the SAC "has failed to plead facts which, accepted as true, would show the Company actually breached the alleged contract."  (R&R at 20.)  The SAC alleges Wahedna "promised that the equity would be issued prior to the close of the next financing round," and that Plaintiff's consideration for the promise was agreeing to continue working for Wahed. (SAC ¶¶17, 45.)  According to the SAC, Plaintiff's resignation from Wahed became effective in early January 2018.  (SAC ¶24.)  But like the FAC, the SAC "does not state when – or whether – the next financing round closed."  (R&R at 21.)  It is possible that the SAC's reference to "now before the fundraiser. . 4 months before april" (SAC ¶21) means the financing round started in April 2018.  But that is just a guess, a complaint may not leave a defendant guessing, *e.g., Belcastro v. Burberry Ltd.*, No. 16-1080, 2017 WL 5991782, at *5 (S.D.N.Y. Dec. 1, 2017), and an April date would not help Plaintiff anyway, since it would mean he left Wahed months before the financing round even began.  As the Court held in its R&R, Plaintiff "cannot plausibly allege a breach without alleging that the triggering event occurred" for the issuance of the stock, "and that he remained employed through that date."  (R&R at 21.)

Accordingly, even if the parties had manifested an intent to be bound, there was no breach, because there is no allegation Plaintiff was a Wahed employee when the financing round closed.

## II.     The Second Amended Complaint Fails to State a Claim for Specific Performance (Count II).

Count II attempts to state a claim for specific performance of the contract to issue Plaintiff additional Company stock.  (SAC ¶41.)  Because, as discussed, the SAC plausibly alleges neither contract nor breach, Count II fails to state a claim upon which relief can be granted and should be dismissed for that reason alone.  *See, e.g., Vanacore v. Vanco Sales, LLC*, 2017 WL 2790549, at *4 (S.D.N.Y. June 27, 2017) ("[b]ecause the oral agreement is unenforceable, Plaintiff's claims for breach of contract and specific performance of that contract must fail") (*quoted in* R&R at 14).

In addition, even if there were an enforceable contract, specific performance would be unavailable.  As an equitable remedy, specific performance may be ordered only where, among other things, "no adequate monetary remedy is available."  *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 261 (2d Cir. 2012); *see also, e.g., Lucente v. IBM Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) ("before the 'extraordinary' equitable remedy of specific performance may be ordered, the party seeking relief must demonstrate that the remedies at law are incomplete and inadequate to establish substantial justice").  Plaintiff attempts to meet that requirement by alleging, "Given that the value of the promised stock is expected to rise substantially, monetary damages are not sufficient to fully compensate Plaintiff for his loss."  (SAC ¶43.)  That does not state a claim for specific performance.

First, it is patently speculative and so fails the Rule 12(b)(6) test, under which factual allegations must "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord, e.g., Fleming v. Laakso*, No. 18-1527, 2019 WL 959521, at *6 (S.D.N.Y. Feb. 5, 2019) (Moses, J.), *adopted*, 2019 WL 952349 (S.D.N.Y. Feb. 26, 2019); *In re Lehman Bros. Sec. & ERISA Litig.*, 903 F. Supp. 2d 152, 168 (S.D.N.Y. 2012) (Kaplan, J.).

Second, it betrays a misunderstanding of the law of contract damages. "It is settled Second Circuit law that in a breach of contract case, damages are calculated at the time of the breach." *Boyce v. Soundview Tech. Grp.*, 464 F.3d 376, 384 (2d Cir. 2006). "New York courts are clear that breach of contract damages are to be measured from the date of the breach"; this rule "is precisely the same when the breach of contract is nondelivery of shares of stock." *Lucente*, 310 F.3d at 262 (internal quotation marks omitted); *accord Boyce*, 464 F.3d at 385. "[C]hanges in value after breach are not relevant to the calculation of damages." *Kovens v. Paul*, No. 04-2238, 2009 WL 562280, at *5 (S.D.N.Y. Mar. 4, 2009), *aff'd*, 358 F. App'x 228 (2d Cir. 2009).

While Defendants vehemently deny that Plaintiff is entitled to anything, he has an adequate available remedy in monetary damages and consequently fails to state a claim for specific performance. For this reason, too, Count II should be dismissed.

## III.    The Second Amended Complaint Fails to State a Claim for Fraud (Count III).

The SAC's attempt to state a fraud claim rests on the same basis as its attempt to state a contract claim: breach of the alleged promise to issue Plaintiff additional stock constituting 1.4% of Wahed's outstanding shares. (SAC ¶¶36-38, 45-49.) As a result, Plaintiff's attempt to state a fraud claim fails. "[A]s a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (internal quotation marks omitted). "[A] breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 444-45 (S.D.N.Y. 2018) (internal quotation marks omitted). Such a duty "must spring from circumstances extraneous to, and not constituting elements of, the contract." *Id.* at 445 (internal quotation marks omitted). Thus, "where a plaintiff pleads a tort claim," like fraud, "in addition to a contract claim and the tort claim seeks the same benefit sought under the contract claim, the tort claim becomes duplicative of the contract claim and may not

stand"; or, stated more simply, "[w]here a party is merely seeking to enforce its bargain, a tort

claim will not lie."  *Id.* (internal quotation marks omitted).

In terms of the requisite elements of fraud, the SAC fails to allege facts showing (1) that

Defendants "made a material false representation"; (2) that Plaintiff "reasonably relied upon the

representation," and (3) that Plaintiff "suffered damage as a result of such reliance."  *Spinelli v.*

*NFL*, 903 F.3d 185, 209 (2d Cir. 2018); *Wall*, 471 F.3d at 415-16; *Bridgestone/Firestone, Inc. v.*

*Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996).

### A.     The Second Amended Complaint Fails to Allege a Material False Representation.

The only misrepresentation the SAC alleges is that "[a]t the time Wahedna made the

representation to Plaintiff" that he would receive an additional 1.4% of Wahed's outstanding

shares, Wahedna "had no intent of actually causing Wahed to issue the promised equity."  (SAC

¶48.)  That is an allegation of an intent not to perform the promise made in the alleged contract,

which does not qualify as a material false representation for purposes of fraud.

"Misrepresentations made to induce a party to enter into a contract are not actionable as fraud ...

unless they are 'collateral' to the contract induced.  Where a plaintiff alleges, in contrast, that the

defendant simply misrepresented its intent to perform under a contract, no separate claim for fraud

will lie, and the plaintiff must instead bring an action for breach of contract."  *Spinelli*, 903 F.3d

at 209 (citation omitted); *see also, e.g., PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y.

2017) ("Under New York law, false statements indicating an intent to perform under a contract are

insufficient to support a claim for fraud.  This rule applies even where the plaintiff does not assert

a claim for breach of contract") (citation omitted); *id.* at 491 ("It is well-established that

misrepresentations of a future intent to perform under a contract are neither collateral nor

extraneous to the contract"); *Wall*, 471 F.3d at 416 ("general allegations that defendant entered

13

into a contract while lacking the intent to perform it are insufficient to support a fraud claim") (internal quotation marks & brackets omitted); *Budow Sales Corp. v. G. Holdings Corp.*, 171 A.D.3d 655, ___ N.Y.S.3d ___, 2019 WL 1905758, at *1 (1st Dep't 2019) ("ent[ry] into a contract with the intent not to perform" is "insufficient to support a fraud claim"); *Gorman v. Fowkes*, 97 A.D.3d 726, 727, 949 N.Y.S.2d 96, 97 (2d Dep't 2012) ("A mere misrepresentation of an intent to perform under the contract is insufficient to sustain a cause of action to recover damages for fraud").

For this reason alone, the SAC fails to state a claim for fraud and Count III should be dismissed.

### B. The Second Amended Complaint Fails to Allege Reliance.

"To plead a common law fraud claim under New York law, a plaintiff must allege facts to support the claim that it justifiably relied on the alleged misrepresentations." *SRM Global Master Fund L.P. v. Bear Stearns Co.*, 829 F.3d 173, 177 (2d Cir. 2016) (internal quotation marks omitted). It its R&R, the Court observed that under Rule 9(b), "[a] higher pleading standard applies to allegations of 'fraud or mistake,' which 'must state with particularity the circumstances constituting fraud or mistake.'" (R&R at 9.) But even under the ordinary Rule 8(a) standard, the SAC's allegation of reliance is grossly inadequate.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (R&R at 8, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).) More specifically, "a formulaic recitation of reliance and harm ... cannot withstand a 12(b)(6) motion to dismiss under *Twombly* and *Iqbal*." *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-7500, 2015 WL 585589, at *6 (S.D.N.Y. Feb. 11, 2015) (internal quotation marks omitted). Here is the only allegation of reliance in the Second Amended Complaint:

14

"Plaintiff relied on Wahedna's representations and did all that he was asked." (SAC ¶46.)

It is hard to imagine anything more conclusory and formulaic.  Allegations like and even more detailed than Plaintiff's have regularly been held inadequate to sustain a complaint against a Rule 12(b)(6) motion.  *See, e.g., Case v. Clivilles*, 216 F. Supp. 3d 367, 378 (S.D.N.Y. 2016) (plaintiff fails to state claim with allegations that she "relied upon [defendant] Clivilles's representations, the representations were false, Clivilles knew the representations were false, and that [plaintiff] suffered damage due to her reliance"); *Walrus Master Fund Ltd. v. Citigroup Global Mkts., Inc.*, No. 08-2404, 2009 WL 928289, at *3 (S.D.N.Y. Mar. 30, 2009) (dismissing claim where "[o]ther than the conclusory statement that 'Walrus justifiably relied on Defendant's representation,' nowhere in its Complaint does Plaintiff allege any action it took in reliance on its receipt of the ... report or audit trail"); *Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*, No. 07-10490, 2009 WL 855648, at *6 (S.D.N.Y. Mar. 25, 2009) (dismissing in light of plaintiff's "conclusory assertion of reliance" – that he "'relied upon and was misled' by defendants' acts and omissions"); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 772 (W.D.N.Y. 2017) (plaintiffs fail to state claim with "the conclusory assertion that, '[i]n reliance upon Defendants [sic] misrepresentations, Plaintiffs ... purchased insurance or health benefit services from Defendants'"); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 466 (S.D.N.Y. 2016) (dismissing fraud claim "for failure to plead reliance" where plaintiffs' allegations "merely asserted conclusory statements such as:  'Plaintiffs relied upon Citibank's representation in making their trade instructions to Citibank'"), *aff'd*, 759 F. App'x 42 (2d Cir. 2019); *Duckett v. Williams*, 86 F. Supp. 3d 268, 274 (S.D.N.Y. 2015) (calling "woefully inadequate" plaintiff's "conclusory" allegation "that he 'relied upon the aforesaid False Representation of Fact to his financial detriment to the amount of $12,884,025.00, that is 33% of the NFL Player Guarantee'").

15

Plaintiff's conclusory allegation of reliance is another reason the SAC fails to state a fraud claim and Count III should be dismissed.

### C.   The Damages Plaintiff Seeks in the Fraud Count Are the Same as the Damages He Seeks in the Contract Count.

The SAC's contract count (Count I) alleges that "Plaintiff has been damaged as he is owed ... the value of the shares he was promised, the amount of which will be proven at trial but to be no less than $2,400,000." (SAC ¶38.) The SAC's fraud count (Count IV) alleges that "Plaintiff is entitled to recover the value of the shares he was promised, the amount of which will be proven at trial but to be no less than $2,400,000." (SAC ¶49.)

This pleads Plaintiff out of court on his attempt to state a fraud claim. "It has long been the rule that parties may not assert fraud claims seeking damages that are duplicative of those recoverable on a cause of action for breach of contract." *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 165 A.D.3d 108, 114, 84 N.Y.S.3d 157, 161 (1st Dep't 2018). Therefore, "[t]o be actionable, extra-contractual damages must seek damages distinct from those sought under a claim for breach of contract." *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11-7426, 2012 WL 3065929, at *9 (S.D.N.Y. July 25, 2012); *see also, e.g., Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01-4426, 2004 WL 758303, at *11 (S.D.N.Y. Apr. 7, 2004) ("the fact that the damages [counterclaim plaintiff] seeks for fraud are identical to the damages he seeks for breach of contract is fatal to his claim"); *Miramax Film Corp. v. Abraham*, No. 01-5202, 2003 WL 22832384, at *13 (S.D.N.Y. Nov. 25, 2003) ("Plaintiff must allege fraud damages which one would not anticipate incurring in the event of a breach [of contract]. But where the alleged fraudulent misrepresentation relate only to the specifications of the contract and plaintiff seeks no special damages, the fraud claim is impermissibly redundant"); *Pugni v. Giannini*, 163 A.D.3d 1018, 1020, 83 N.Y.S.3d 491, 493 (2d Dep't 2018) ("a cause of action sounding in fraud is duplicative of a breach of contract

16

cause of action" and "subject to dismissal" if "it is based on identical circumstances, and does not allege that the misrepresentation resulted in any loss independent of the damages allegedly incurred for breach of contract"); *Fin. Structures Ltd. v. UBS AG*, 77 A.D.3d 417, 419, 909 N.Y.S.2d 45, 47 (1st Dep't 2010) ("The motion court erred ... in failing to dismiss the fraud cause of action as duplicative of the breach-of-contract cause of action, inasmuch as it is based on the same facts that underlie the contract cause of action, is not collateral to the contract, and does not seek damages that would not be recoverable under a contract measure of damages"); *J.E. Morgan Knitting Mills, Inc. v. Reeves Bros., Inc.*, 243 A.D.2d 422, 423, 663 N.Y.S.2d 211, 211 (1st Dep't 1997) (affirming dismissal of fraud claim where it "is based on the same facts as underlie the contract claim and is not collateral to the contract and no damages are alleged that would not be recoverable under a contract measure of damages").

For this reason, too, the SAC fails to state a fraud claim and Count III should be dismissed.

## IV.  The Second Amended Complaint Fails to State a New York Labor Law Claim (Count IV).

Count IV of the SAC is ripe for dismissal.  Plaintiff alleges that because Wahed paid Plaintiff only $40,000 of the $80,000 bonus he was allegedly promised, the Company violated New York Labor Law §193.  The Court has already held that Plaintiff's attempt to state a Labor Law claim stands or falls with his success or failure in stating a contract claim based on the bonus. (R&R at 26.)  As explained above, the alleged promise to pay Plaintiff a bonus was not supported by consideration, and so did not give rise to a contract but was "a mere gratuity, and unenforceable."  *De Vito*, 150 A.D.2d at 332, 540 N.Y.S.2d at 860.  Accordingly, "[t]he failure of [plaintiff's] contract claim also necessarily defeats his wage claim under New York Labor Law §193."  *O'Grady v. BlueCrest Capital Mgmt. LLP*, 646 F. App'x 2, 4 (2d Cir. 2016) (*quoted in*

R&R at 26).  Count IV of the SAC, like the preceding three counts, accordingly fails to state a claim upon which relief can be granted and should be dismissed.

## V.     The Second Amended Complaint Fails to State a Claim for Retaliation (Count V).

### A.     Plaintiff's Allegations Are Insufficient.

The SAC alleges that after he resigned from Wahed, an attorney practicing in India sent Plaintiff a cease and desist letter, telling him that his then-threatened lawsuit was "grossly without merit and aimed at blackmailing our Client with an intention to cause wrongful loss to same." (SAC ¶32.)  The letter goes on to say that if Plaintiff did not cease his activities, "we shall be constrained to initiate criminal proceedings ... against you" under the laws of India, for criminal conspiracy, extortion, dishonest misappropriation of property, criminal breach of trust, cheating, mischief, and criminal intimidation.  (*Id.*)  At the same time, Plaintiff was sent a cease and desist letter from a United Arab Emirates attorney that stated, "[t]he notifier is preparing now to take legal action against the notified before the UAE jurisdiction."  (SAC ¶34.)

The SAC alleges that these letters, allegedly sent on Wahed's behalf, are "retaliatory conduct" that "constitute[] a violation of New York Labor Law section 215," on the ground that the "threat [of legal action] was baseless as Plaintiff is not subject to criminal prosecution in India (or the UAE) for asserting his lawful right to be paid wages under the New York Labor Law earned and promised to him under by [sic] his contract with the Company."  (SAC ¶¶48-49.)  Plaintiff's rhetoric aside, he is making a bald, conclusory assertion about Indian and UAE law without any citations to relevant (or any) legal authority.

That cannot satisfy the Court's mandate for Plaintiff to provide allegations showing that "potential criminal claims (if asserted against him) would be 'groundless' or brought in 'bad faith.'"  (R&R at 32; *see also id.* at 30, noting that the "narrow range" of conduct that can support a post-employment retaliation claim "includes instituting 'bad faith or groundless counterclaims'

18

or other 'bad faith litigation' against the former employee.")  In this context, "foreign law is to be proved as a fact." *Black Diamond S.S. Corp. v. Robert Stewart & Sons, Ltd.*, 336 U.S. 386, 397 (1949); *see also, e.g., Abdille v. Ashcroft*, 242 F.3d 477, 490 (3d Cir. 2001) ("[f]oreign law is a matter to be proven by the party seeking to rely on it").  "The Court does not take judicial notice of the law of other nations, it must be pleaded and proved by counsel." *Munsell v. La Brasserie Molson Du Quebec Limitee*, 623 F. Supp. 100, 102 (E.D.N.Y. 1985); *Joy v. Hay Grp.*, No. 02-4989, 2003 WL 22118930, at *12 n.7 (N.D. Ill. Sept. 11, 2003).  Plaintiff "has the burden to show the relevant content of foreign law." *Silica Tech, L.L.C. v. J-Fiber, GmbH*, No. 06-10293, 2009 WL 2579432, at *11 (D. Mass. Aug. 19, 2009); *see also, e.g., Ferrostaal, Inc. v. M/V Sea Phoenix*, No. 03-164, 2004 WL 3304655, at *4 (D.N.J. Dec. 14, 2004) (noting that under *Abdille*, "foreign law is treated as a fact that must be proven by the parties," and that "Plaintiff has not supported its assertion [about] Tunisian law....  It has not provided any affidavits, expert reports, or excerpts from Tunisian statutes"), *aff'd*, 447 F.3d 212 (3d Cir. 2006); *Fallman v. Hotel Insider Ltd*, No. 14-10140, 2016 WL 316378, at *4 (S.D.N.Y. Jan. 15, 2016) (party relying on foreign law has "the burden of proving foreign law to enable the district court to apply it in a particular case").

The SAC cites absolutely no legal authority from either India or the UAE that even suggests the cease and desist letters he received were "groundless" or sent in "bad faith" under the laws of those countries.  The SAC accordingly fails to state a retaliation claim and should be dismissed.

### B.    Plaintiff Has Failed to File Proof of Notice to the State Attorney General.

In recommending that Plaintiff be granted leave to amend the retaliation claim, the Court also instructed Plaintiff to provide notice to the state attorney general (albeit belatedly) pursuant to New York Labor Law §215(2)(b) ("At or before the commencement of any action under this section, notice thereof shall be served upon the attorney general by the employee"), and to "file proof of such notice immediately thereafter."  (R&R at 33, quoting *Romero v. Bestcare, Inc.*, 2018

19

WL 1702001, at *4 (E.D.N.Y. Feb. 28, 2018), *adopted*, 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2019).)  Plaintiff has failed to file the requisite proof of notice with the Court.  This alone would justify dismissal of Count V.

## CONCLUSION

Plaintiff has attempted and failed to state the same claims for a second time in his Second Amended Complaint.  He has again failed to state claims for breach of contract, specific performance, fraud, violation of the New York Labor Law, and retaliation.  The Court should accordingly grant Defendants' motion and dismiss the Second Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Dismissal this time should be with prejudice, since there is no reason to think that a third attempt by Plaintiff to state the same claims would be anything but futile.

Respectfully submitted,
FISHER & PHILLIPS LLP
Attorneys for Defendants Wahed Invest,
LLC, Wahed Inc., and Junaid Wahedna

By:___*s/David B. Lichtenberg*_____
DAVID B. LICHTENBERG
For Fisher & Phillips LLP

Dated June 19, 2019

20