```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___1/8/2020___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARSH KHURANA,

           Plaintiff,

    -against-

WAHED INVEST, LLC, et al.,

           Defendants.

18-CV-233 (LAK) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. LEWIS A. KAPLAN**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is the second motion by Wahed Invest, LLC (Wahed LLC), its parent Wahed Inc., and their Chief Executive Officer, Junaid Wahedna, to dismiss all of claims asserted against them by plaintiff Harsh Khurana. At issue is plaintiff's Second Amended Complaint (SAC) (Dkt. No. 35), which asserts claims for breach of contract, specific performance, fraud, failure to pay wages in violation of N.Y. Labor Law (NYLL) § 198(1-a), and retaliation in violation of NYLL § 215. The contract, fraud, and wage claims arise from Wahedna's alleged oral promise to pay plaintiff an $80,000 cash bonus and award him restricted stock representing an additional 1.4% ownership interest in the business. The retaliation claim arises from an email sent to plaintiff's counsel, in response to counsel's prelitigation correspondence, warning of "potential criminal liability" in various foreign jurisdictions "should this action be pursued." SAC at 13, ¶ 48.[1]

Defendants move to dismiss all of plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 39.) For the reasons that follow, I respectfully recommend that the motion be granted in part. Plaintiff's claim for specific performance should be dismissed because specific performance is a remedy, not a cause of action. His claim for fraud should be dismissed – this time, with

---

[1] The SAC, somewhat confusingly, reuses paragraph numbers 46-50. *Compare* SAC at 11-12 (Count III) *with id.* at 13 (Count V). I also note that the second ¶ 47, which appears on page 13, reprints N.Y. Penal Code § 135.6, which is not relevant to any claim asserted in the SAC and should therefore be stricken in accordance with Fed. R. Civ. P. 12(f)(1).

prejudice – as duplicative of his contract claim. As to the remaining claims, defendants' motion should be denied and they should be directed to answer.

## I.     BACKGROUND

### A.     Facts Alleged in the Second Amended Complaint

Plaintiff is a resident of New Jersey and a Chartered Financial Analyst. SAC ¶ 2. Wahed LLC is a Delaware limited liability company and a wholly owned subsidiary of Wahed Inc., a Delaware corporation. *Id*. ¶ 3. Both entities (collectively the Company) are headquartered in New York City, and together they "form an investment company purporting to offer investment opportunities compliant with Islamic financial ethics." *Id*. Wahedna, a resident of the United Arab Emirates, is the Company's Chief Executive Officer and at all relevant times had "70% voting rights" on the Wahed Inc. board of directors (the Board). *Id*. ¶ 4.

In May 2017, plaintiff was hired to serve as the Company's Chief Compliance Officer, reporting to Wahedna. SAC ¶ 8. His offer letter stated that, in addition to his salary, he would be granted an option, with a four-year vesting schedule, to purchase 0.6% of the Company's common stock. *Id*.; *see also* Declaration of Gavin J. Rooney (Rooney Decl.) Ex. A (Dkt. No. 15-1) (Offer Letter).[2] Sometime later, however, "Plaintiff and Wahedna orally agreed to change the nature of Plaintiff's equity," *id*. ¶ 9, and Wahedna told plaintiff that he would receive a "restricted stock award" instead of an option. *Id*.

---

[2] The Court may consider the terms of the Offer Letter in connection with the pending motion because plaintiff expressly references it in the SAC and quotes its terms. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)) (a complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint").

On October 12, 2017, the Board approved a grant of 11,160 restricted common shares to plaintiff, with a two-year vesting schedule, "i.e., one year after the grant, the restrictions would lapse as to 50% of the shares, and the restrictions would lapse on the remaining shares on a monthly basis over the following year." SAC ¶ 9. The "requisite follow up paper work" was signed on October 23, 2017. *Id*.; *see also* Rooney Decl. Ex. E (Dkt. No. 15-5) (copy of Wahed Inc. Certificate No. CS-14, dated October 11, 2017 and signed by Wahedna, together with an Acceptance Agreement, dated October 23, 2017 and signed by plaintiff).[3] The 11,160 shares granted to plaintiff represented 0.6% of Wahed Inc.'s common stock. SAC ¶ 17.

Plaintiff performed well, "driving up the value of the enterprise," and in the summer of 2017, Wahedna promoted plaintiff to Chief Financial Officer. SAC ¶¶ 10-12. In early September of that year, during a meeting in London, Wahedna told plaintiff that he would "increase Plaintiff's compensation in equity by another 1-2% of outstanding shares." *Id*. ¶ 13. At the same meeting, Wahedna promised to pay plaintiff "a cash bonus of $80,000, with $40,000 payable immediately and $40,000 paid . . . on or before December 31, 2017," *id*. ¶ 14, provided that plaintiff remained at the Company through "the bonus payout date." *Id*. Plaintiff received the first half of the bonus on September 20, 2017. *Id*. ¶ 15.

---

[3] The Certificate, which I may also consider in connection with the pending motion, *see supra* n.2, reflects that Khurana was the holder of 11,160 shares of Common Stock which could be "transferred only in accordance with the terms of an agreement between the Company and the stockholder." Rooney Decl. Ex. E, at ECF page 3. Exhibit E also includes copies of the Wahed Inc. 2017 Equity Incentive Plan (Plan) (ECF pages 8-24), Restricted Stock Award Agreement (ECF pages 25-37), and 2017 Equity Incentive Plan Information Statement (ECF pages 38-51). Although all of these documents, according to defendants' counsel, were provided to plaintiff at the time he received the restricted stock grant, *see* Rooney Decl. ¶ 7, plaintiff does not expressly reference them in the SAC. Consequently, although I note the contents of these documents when discussing certain issues that the parties will likely be required to litigate once the pleadings are settled, *see infra* §§ II(B)(3), II(C), I have not relied on them to formulate my recommendation as to the disposition of defendants' motion to dismiss.

On September 29, 2017, Wahedna met again with plaintiff, this time at a restaurant in New Jersey. SAC ¶ 16. The purpose of the meeting was "to incent [plaintiff] to remain with the Company" and to "follow through on [Wahedna's] prior promises to award [plaintiff] a substantial equity stake." *Id*. During the meeting, Wahedna proposed that plaintiff "be elevated to the dual role of Chief Strategy Officer and Chief Financial Officer." *Id*. Wahedna told plaintiff that "2.5% of the Company's outstanding shares" remained in the pool "available to be granted," of which 1.4% would go to plaintiff, bringing his "total stake to an even 2%." SAC ¶ 17. The new grant would be subject to the same restrictions as the prior grant, "but with a shortened cliff," such that 50% "would become unrestricted as of April of 2018." *Id.* Based on the Company's then-current valuation of $120 million, plaintiff's 2% "would be equal to approximately $2.4 million." *Id*.

Wahedna promised that he would "cause the decision to grant such equity to be approved by the Board at its December 12, 2017 meeting," and that "the equity would be issued prior to the close of the next financing round." SAC ¶ 17. Given that Wahedna controlled the Board, plaintiff expected that "the stock would issue on that date, and the customary paperwork . . . would be sent to him following the meeting of the Board." *Id*. Plaintiff "agreed to the proposal and continued to work for the Company and execute on all that he was asked." *Id*. ¶ 18.

On December 9, 2017, during another lunch meeting, Wahedna again promised plaintiff that "he would have the Board approve the 1.4% restricted stock grant to Plaintiff at the December Board meeting." SAC ¶ 19. However, on December 12, the Board's Compensation Committee approved a restricted stock grant of only 0.15% to plaintiff. *Id*. ¶ 20. Wahedna gave plaintiff no reason as to why the Board approved less than he had promised. *Id*.

Plaintiff expressed disappointment that the Board did not approve the 1.4% grant promised to him, and on December 13, 2017, Wahedna responded (via text), "the only reason I insisted on

them even considering giving you equity now before the fundraise . . . 4 months before april, is because I promised you." SAC ¶ 21. Wahedna went on to say that that "everyone will be considered at year end for what was delivered," adding, "honestly cant do more than this." *Id.*

Plaintiff made it "clear" to Wahedna that "he could not remain with the Company under these circumstances," and Wahedna "quite readily agreed that plaintiff should leave the Company." SAC ¶ 23. It is not clear from the SAC when this conversation occurred or when plaintiff formally announced his resignation. He alleges, however, that he "was employed by the Company through and including December 31, 2017," *id.* ¶ 22, and that as of January 5, 2018, he was still "negotiating a possible separation" and Wahedna was still asking him for work. *Id.* ¶ 24.

On January 9, 2018, the Company sent plaintiff a letter stating that his resignation was effective December 30, 2017. SAC ¶ 24. Plaintiff alleges that the Company picked that date "arbitrarily" to deny him the second half of his bonus, *id.*, which was never paid. *Id.* ¶ 22.

According to plaintiff, Wahedna "never intended to follow through on the promise to Plaintiff of the additional 1.4% restricted stock," and in fact, "told another senior executive at the Company that he was 'just putting out carrots to keep [Plaintiff] entertained.'" SAC ¶ 25.

On January 4 and 5, 2018, respectively, plaintiff's counsel sent a prelitigation letter to the Company and a draft complaint, including a claim under NYLL § 193, to its outside counsel. SAC ¶¶ 29-30. On January 9, 2018, counsel received a responding email from Musa Abduul-Basser, the Company's Chief Legal Officer, stating:

> In connection with your January 4th letter to our company and subsequent conversations with Lowenstein Sandler LLP regarding Mr. Khurana's allegations and contemplated civil action, please see attached the pending complaint notices from our counsel in India and the United Arab Emirates. Given the international nature of this dispute you may wish to advise your client of the potential *criminal liability* that may attach in foreign jurisdictions should *this action be pursued*.

SAC ¶ 31 (emphasis in the original). Attached to the email were two letters: one from Gaurav Gupta, who called himself an "Advocate" but did not list any firm, *id*. ¶ 32, and one from "an attorney," not named in the SAC, "on behalf of Wahedna." *Id*. ¶ 34.

The Gupta letter (entitled "Cease and Desist from intimidating and causing wrongful loss to Wahed Technologies Private Limited and Wahed Inc") advised plaintiff to "cease and desist from the illegal and mala fide tactics being employed by you to criminally intimidate Wahed Technologies Private Limited and its investors." SAC ¶ 32. Gupta warned plaintiff that if he did not drop his legal claims against the Company, "'we shall be constrained to initiate criminal proceedings . . . against you,'" including "proceedings for 'criminal conspiracy', 'extortion', 'dishonest misappropriation of property,' 'criminal breach of trust,' 'cheating,' 'mischief,' and 'criminal intimidation' under the laws of India." *Id*. ¶ 32 (punctuation in the original). Plaintiff alleges that the threatened criminal claims were "baseless," as nothing about his assertion of his domestic legal rights against two U.S. entities and their CEO "would subject him to criminal liability in India." *Id*. ¶ 33.

The second letter, a "purported legal notice" from "an attorney on behalf of Wahedna," which was written in Arabic and translated into English, stated that Wahedna did not promise plaintiff anything and was "'preparing now to take legal action against [plaintiff] before the UAE jurisdiction.'" SAC ¶ 34. Plaintiff alleges that Wahedna's unspecified claims in the UAE were also "baseless." *Id*. According to the SAC, both letters "were solely intended to intimidate Plaintiff into dropping his legal claims and in retaliation for asserting [his] rights." *Id*. ¶ 33.

## B.   Procedural History

Plaintiff filed this action on January 11, 2018 – two days after Abduul-Basser's email – and filed his First Amended Complaint (FAC) (Dkt. No. 8) on January 30, 2018. In the FAC he asserted six claims, for (1) breach of contract; (2) specific performance; (3) fraud; (4) failure to pay wages,

in violation of NYLL § 198(1-a); (5) coercion, in violation of N.Y. Penal Code § 135.60; and (6) retaliation. FAC ¶¶ 16-53. The coercion and retaliation claims arose out of Abduul-Basser's "threat of criminal prosecution should Plaintiff commence this lawsuit." FAC ¶¶ 41, 44, 49, 52.

On February 1, 2018, Your Honor referred the case to me for general pretrial management and report and recommendation on dispositive motions. (Dkt. No. 9.)

On March 12, 2018, defendants moved to dismiss all of plaintiff's claims pursuant to Rule 12(b)(6). (Dkt. No. 11.) On February 26, 2019, I recommended that the motion be granted, that the coercion claim be dismissed with prejudice, because there is no private right of action under N.Y. Penal Code § 135.60, and that the other claims be dismissed with leave to amend. Report and Recommendation dated Feb. 26, 2019 (2/26/19 R&R) (Dkt. No. 32), at 1, 33. On March 29, 2019, Your Honor adopted my recommendations and gave plaintiff until May 6, 2019 to amend his complaint. (Dkt. No. 34.)

On May 6, 2019, Plaintiff filed his SAC. Count I seeks damages for breach of his alleged oral contract with the Company. Count II seeks specific performance of the equity terms of that contract. Count III seeks damages for fraud, based on the allegation that Wahedna "had no intent of actually causing [the Company] to issue the promised equity" when he promised to do so in September 2017. SAC ¶ 48. Count IV seeks to recover the second $40,000 bonus payment, plus another $40,000 in liquidated damages (and legal fees) pursuant to NYLL §§ 193 and 198(1-a). Count V alleges that the Company's "threat of criminal prosecution should Plaintiff commence this lawsuit constitutes retaliation" for plaintiff's assertion of a claim under NYLL § 193, and thus violates NYLL § 215. SAC at 13 ¶ 48. All five claims are asserted against both Wahed entities. Wahedna is named as a defendant only as to the fraud claim asserted in Count III.

The present motion, filed on June 19, 2019, once again asks this Court to dismiss all of plaintiff's claims pursuant to Rule 12(b)(6). Defendants argue that the SAC fails to allege an enforceable contract as to the cash bonus terms because the bonus was intended as a reward for past performance and was thus unsupported by new consideration, Def. Mem. (Dkt. No. 40) at 5; that the parties did not intend to be bound by the equity terms they discussed in the absence of a signed writing, *id*. at 8; and that even if there was an enforceable oral contract, there was no breach, because plaintiff left the Company "prior to the close of the next financing round," which was the deadline for issuing the restricted stock. *Id*. at 10. Defendants further contend that even if plaintiff has successfully pleaded a claim for breach of contract, he is not entitled to specific performance because he has an adequate damages remedy. *Id*. at 11-12.

As to plaintiff's fraud claim, defendants argue that it merely restates his contract claim. Def. Mem. at 12-14, 16. Plaintiff's NYLL claims should also be dismissed, according to defendants, because the § 193 wage claim fails along with the underlying contract claim, *id*. at 17, and the § 215 retaliation claim does not demonstrate that the "potential criminal claims (if asserted against him) would be 'groundless' or brought in 'bad faith.'" *Id*. at 18 (quoting 2/26/19 R&R at 32). Defendants also fault plaintiff for failing to "file proof" that he notified the New York Attorney General of his § 215 claim as required by that statute. *Id*. at 19.

In his opposition papers, filed on July 26, 2019, plaintiff asserts that he has adequately pleaded every element of his claims. Pl. Mem. (Dkt. No. 43) at 1-2. Specific performance is an appropriate remedy for the Company's breach of the equity terms of the contract, he argues, because its stock is not publicly traded and therefore its value is undefined. *Id*. at 12-13. Plaintiff further contends that he had adequately pleaded facts showing that Wahedna fraudulently misrepresented his intentions at the time of his promise, and that plaintiff relied on those

misrepresentations to his detriment by continuing his employment with the Company through the end of 2017. *Id*. at 14-15. He adds that even if his fraud claim against the Company is duplicative of his contract claims, his fraud claim against Wahedna (against whom no contract claim is alleged) is distinct, non-duplicative, and has been adequately pleaded. *Id*. at 18-19. Finally, plaintiff argues that he has adequately pleaded his retaliation claim and provided proper notice of the claim to the Attorney General as directed by the Court. *Id*. at 19-22.

Discovery has been stayed pending decision on the motion to dismiss the SAC. *See* Order dated March 20, 2018 (Dkt. No. 20), ¶ 3; Order dated October 7, 2019 (Dkt. No. 47).

## II.   DISCUSSION

### A.   Standards

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept as true all *facts* alleged in the complaint," *Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 237 (2d Cir. 2007) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002)) (emphasis added), and "draw all reasonable inferences in favor of the plaintiff." *Kassner*, 496 F.3d at 237 (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)); *accord McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court should not accept legal *conclusions* as true: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

If the plaintiff's "short and plain statement" fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). A claim achieves "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a plaintiff cannot "nudge[ ] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

A higher pleading standard applies to allegations of "fraud or mistake," which "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *See also Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (Rule 9(b) "governs the pleading of fraud claims and it requires that plaintiff plead fraud with particularity"). "[T]he adequacy of particularized allegations under Rule 9(b) is case- and context-specific." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (quoting *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 236 (2d Cir. 2015)). "Failure to satisfy the Rule 9(b) standard, if applicable, is grounds for dismissal." *McBeth v. Porges*, 171 F. Supp. 3d 216, 223 (S.D.N.Y. 2016) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) and *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010)).

**B.      Breach of Contract**

Under New York law, the applicability of which all parties assume,[4] the elements of a

breach of contract claim are "the formation of an agreement, performance by one party, breach of

the agreement by the other party, and damages." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202

(S.D.N.Y. 2008) (citing *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir.

1998)). As to the first element, the plaintiff must "prove . . . that an enforceable contract existed."

*Roberts v. Karimi,* 251 F.3d 404, 407 (2d Cir. 2001); *see also Banco Espirito Santo de Investimento,*

*S.A. v. Citibank, N.A.*, 2003 WL 23018888, at *4 (S.D.N.Y. Dec. 22, 2003) (dismissing contract

claim because plaintiff "failed to allege facts sufficient to show that an enforceable contract

existed"), *aff'd,* 110 F. App'x 191 (2d Cir. 2004).

**1.      Definite Terms**

An oral employment contract – even a contract promising equity compensation – is not for

that reason alone unenforceable. *See*, *e.g.*, *Canet v. Gooch Wear Travelstead*, 917 F. Supp. 969,

990 (E.D.N.Y. 1990). However, to create a binding contract, oral or written,

> . . . there must be a manifestation of mutual assent sufficiently definite to assure
> that the parties are truly in agreement with respect to all material terms. This
> requirement assures that the judiciary can give teeth to the parties' mutually
> agreed terms and conditions when one party seeks to uphold them against the
> other. Generally, courts look to the basic elements of the offer and the
> acceptance to determine whether there is an objective meeting of the minds
> sufficient to give rise to a binding and enforceable contract.

---

[4] Plaintiff's Offer Letter, which he countersigned, states that any disputes "arising out of, related
to, or in any way connected with . . . your employment with the Company or any other relationship
between you and the Company" are governed by "New York law, excluding laws relating to
conflicts or choice of law." Rooney Decl. Ex. A, § 8.  Moreover, "a contract executed in New York
and litigated in a district court sitting in New York while exercising diversity jurisdiction must be
interpreted pursuant to New York law." *82-11 Queens Blvd. Realty, Corp. v. Sunoco, Inc. (R &
M)*, 951 F. Supp. 2d 376, 381 (E.D.N.Y. 2013).

*Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589, 693 N.Y.S.2d 857, 860 (1999). Thus, "[a] breach of contract claim will be dismissed . . . as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (quoting *Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004)), *aff'd,* 2019 WL 80773 (2d Cir. Jan. 3, 2019); *see also Metro-Gem Leasing & Funding Corp. v. Dancy*, 2017 WL 3491966, at *11 (E.D.N.Y. June 19, 2017) (dismissing breach of contract claim where plaintiff failed to allege, *inter alia*, essential terms of contract).

A compensation term is insufficiently definite if it cannot be "objectively determined without the need for new expressions by the parties." *Stone Key Partners LLC v. Monster Worldwide, Inc.*, 333 F. Supp. 3d 316, 334 (S.D.N.Y. 2018) (quoting *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483, 548 N.Y.S.2d 920, 923 (1989)). However, a contract which is too amorphous to enforce when made may, over time, take on a more definite shape through the parties' conduct and continued communication. *See*, *e.g.*, *Canet*, 917 F. Supp. at 992 (oral employment agreement which contained "indefinite material terms" when made regarding bonuses and equity participation became enforceable after "subsequent agreements" between the parties "established the missing terms"); *Smith v. Horsehead Indus., Inc.*, 1995 WL 406024, at *5-6 (S.D.N.Y. July 10, 1995) (employer's written assurance that employee could participate in its anticipated "stock incentive program" was not too vague to enforce where the original promise was "supplemented," over time, by "oral representations made to Smith" and by multiple "drafts of equity participation plans and stock incentive agreements," which provided

"some method of determining the nature of the plan and Smith's entitlement according to the provisions of that plan that is more concrete than 'wish, will and desire'").

Here, the SAC adequately pleads the essential terms of the contract, including the nature of the equity that plaintiff says he was promised. In early September, 2017, Wahedna offered plaintiff an $80,000 cash bonus, with $40,000 to be paid immediately and another $40,000 due by December 31, 2017, in return for plaintiff's continued employment with the Company. SAC ¶ 14. At the same meeting, the two men "discussed that Wahedna would increase Plaintiff's compensation in equity by another 1-2% of outstanding shares." *Id*. ¶ 13. That discussion, standing alone, was too vague to enforce as a contract. However, on September 29, 2017, after the Company paid the first half of the cash bonus, Wahedna met again with plaintiff to "follow through on his prior promise to award him a substantial additional equity stake." *Id*. ¶ 16. At that meeting, Wahedna expressly promised a restricted stock grant of 1.4% of the Company's common shares, which when combined with his earlier grant would bring plaintiff's total equity stake in the Company to 2%. *Id*. ¶ 17. Wahedna specified that the stock would be "subject to the same restrictions as the prior grant" (which were not only definite but reduced to writing, *see* Rooney Decl. Ex. E), except that 50% of the new shares would vest (become unrestricted) in April 2018 rather than at the one-year mark. *Id*. Wahedna further specified that he would "cause the decision to grant such equity to be approved by the Board at its December 12, 2017 meeting." *Id*. ¶ 17. Plaintiff "agreed to the proposal" and continued to work for the Company, *id*. ¶ 18, which he was not otherwise required to do. *See* SAC ¶ 24 (referring to plaintiff as an "at-will employee"); Rooney Decl. Ex. A, ¶ 6 (stating that plaintiff was an "at will employee"). These allegations (unlike those in plaintiff's FAC, *see* 2/26/19 R&R, at 16) describe the essential terms of the purported contract with sufficient clarity to satisfy Rule 8(a).

13

## 2.        New Consideration

Rather than dispute whether the terms of the alleged contract are sufficiently definite, defendants argue that the promised cash bonus was "in return for a job well done; that is, for past consideration," and therefore unenforceable unless reduced to a writing complying with N.Y. Gen. Oblig. Law § 5-1105. Def. Mem. at 5-7. Defendants are correct that a bonus based solely on past performance is not actionable "[i]n the absence of a writing that can be understood without dependence upon extrinsic evidence and that clearly describes the consideration." *Clark v. Bank of New York*, 185 A.D.2d 138, 140-41, 585 N.Y.S.2d 749, 751 (1st Dep't 1992). "Under New York law, '[a] promise to pay an employee a bonus which does not obligate the employee to do or forego doing something that he was not otherwise obligated to do is a mere gratuity, and unenforceable.'" *Hughes v. Standard Chartered Bank, PLC*, 2010 WL 1644949, at *11 (S.D.N.Y. Apr. 14, 2010) (quoting *De Vito v. Pokoik,* 150 A.D.2d 331, 332, 540 N.Y.S.2d 858, 860 (2d Dep't 1989)).

In this case, however, the SAC clearly alleges that both the cash bonus and the equity grant were enticements to secure plaintiff's continued employment with the Company. *See*, *e.g*., SAC ¶ 16 ("Wahedna met with Plaintiff . . . to discuss his position and compensation in an effort to incent him to remain with the Company."); *id*. ¶ 14 ("Wahedna placed no conditions on the [cash] bonus, *save the expectation that Plaintiff be employed through and including the bonus payout date*.") (emphasis added); *id.* ¶ 45 ("Wahedna represented to Plaintiff that *if* he agreed to continue to work for Wahed, he would be awarded 1.4% of the then-outstanding shares of the Company.") (emphasis added). These allegations, accepted as true, establish that in order to earn the promised bonus plaintiff was obligated to do something – keep working for defendants – that, as an at will employee, "he was not otherwise obligated to do." *De Vito*, 150 A.D.2d at 332, 540 N.Y.S.2d at 860. *See also* Def. Mem. at 10 (conceding, in another section of their brief, that "Plaintiff's

14

consideration for the promise [of equity] was agreeing to continue working for Wahed").[5] Plaintiff has therefore adequately pleaded the necessary consideration for the cash bonus terms.

### 3.  Intent to be Bound

"Absent a mutual intention to be bound, there can be no contract." *Banco Espirito Santo de Investimento*, 2003 WL 23018888, at *4 (quoting *Advanced Marine Technicians, Inc. v. Burnham Securities, Inc.*, 16 F. Supp. 2d 375, 380 (S.D.N.Y.1998) (Kaplan, J.)). Notwithstanding the clarity of the contract terms alleged in the SAC – including the equity terms – defendants argue that the parties could not have intended to be bound until and unless they memorialized their understandings in a written agreement. Def. Mem. at 8.

In our Circuit, the courts consider four factors when evaluating whether an oral agreement is enforceable in the absence of a signed writing: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). *Accord Rubinstein v. Clark & Green, Inc.*, 395 F. App'x 786 (2d Cir. 2010); *Adjustrite Sys., Inc. v. GAB Bus. Servs.*,

---

[5] In *Clark*, by contrast, the plaintiff claimed that his former employer told him he would receive a $60,000 "performance bonus" for work performed in 1988, to be paid in February and May 1989, "and that he need not remain employed to receive it." 185 A.D.2d at 139, 585 N.Y.S.2d at 750-51. Similarly, in *Hughes* – also cited by defendants – the plaintiff sued to recover a $95,000 bonus that was allegedly promised to him "in early 2009" for his "efforts in 2008." 2010 WL 1644949, at *11. In both cases the court found that the bonuses were unsupported by new consideration and therefore were unenforceable absent a clear written agreement. *Clark*, 185 A.D.2d at 140, 585 N.Y.S.2d at 749 (plaintiff's "performance bonus" was "based upon past consideration since it was for the purpose of rewarding him for work which he had already performed"); *Hughes*, 2010 WL 1644949, at *12 (dismissing claims because the amended complaint "does not allege that consideration was given in exchange for the alleged promise" of a bonus for work previously performed).

*Inc.*, 145 F.3d 543, 549 (2d Cir. 1998)). "No single factor is decisive, but each provides significant guidance." *In re Lehman Bros. Holdings Inc.*, 739 F. App'x 55, 57 (2d Cir. 2018) (quoting *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 322 (2d Cir. 1997)). Whether the parties intended to be bound by an oral agreement "is a question of fact, to be determined by examination of the totality of the circumstances." *Ciaramella*, 131 F.3d at 322.

In this case, the first *Winston* factor supports plaintiff, in that he does not allege that any party expressly reserved the right not to be bound in the absence of a writing. As to the second factor, plaintiff alleges that defendants partially performed the cash bonus term of the alleged contract – by paying the first half of the bonus, SAC ¶ 15 – and partially performed the equity terms by causing the Compensation Committee of the Board to approve a restricted stock grant of 0.15% (rather than 1.4%) of the Company's common shares at the December 12, 2017 Board meeting. *Id.* ¶ 20. Thus, the second *Winston* factor slightly favors plaintiff.[6]

"The third *Winston* factor examines whether the parties agreed on all material terms." *Doe v. Kogut*, 2017 WL 1287144, at *7 (S.D.N.Y. Apr. 6, 2017), *aff'd,* 2019 WL 137715 (2d Cir. Jan. 9, 2019); *see also Grgurev v. Licul*, 2016 WL 6652741, at *6 (S.D.N.Y. Nov. 10, 2016) ("courts analyzing this factor focus on whether the parties reached agreement with respect to all *material* terms") (emphasis in original). In their motion papers, defendants do not discuss the third *Winston* factor at all, thereby implicitly acknowledging that it also favors plaintiff. As discussed above, the SAC (unlike the FAC) describes the equity terms of the alleged oral contract

---

[6] Defendants argue that no portion of the equity agreement was performed because the new shares were never actually "issued." Def. Mem. at 9.  Plaintiff clearly alleges, however, that Wahedna promised to have the Board approve the equity grant at its December meeting but, instead, "caused the Compensation Committee . . . to approve . . . a fraction of the promised equity." *See also* SAC ¶¶ 20-21 (quoting a text message from Wahedna, stating, "the only reason I insisted on them even considering giving you equity now before the fundraise . . . is because I promised you").

in detail, including the nature of the award, the size of the grant, the vesting terms, and the timing of the necessary vote. Moreover, Wahedna allegedly repeated his promise to plaintiff on at least three occasions, each time confirming specific details. SAC ¶ 13-14, 17, 19. Therefore, I conclude that the SAC adequately pleads that "all of the terms of the alleged contract have been agreed upon." *Winston*, 777 F.2d at 80.

The fourth *Winston* factor asks whether the agreement is of a type that is ordinarily committed to writing. Courts "look to the complexity of the transaction to determine whether the agreement is the kind ordinarily memorialized by a written agreement," *Ciaramella*, 131 F.3d at 326, as well as the "history and past practice" of the parties. *Cestari v. Bancorp, Inc.*, 364 F. Supp. 3d 327, 336-37 (S.D.N.Y. 2019). An award of equity in a financial services start-up is a complex transaction which is ordinarily evidenced by detailed written agreements. *See, e.g.*, *Braun v. CMGI, Inc.*, 64 F. App'x 301, 303 (2d Cir. 2003) (finding that former CEO of internet broadcasting company was sophisticated party who could not reasonably have expected that "an options package, which both parties hoped would become very valuable, would be fixed and made enforceable in a conversation"). According to plaintiff, however, this was not the first time that Wahedna had orally promised a restricted stock award. *See* SAC ¶ 9 (Wahedna told plaintiff that he "would have the Company issue Plaintiff [a] restricted stock award . . . which is exactly what he did"). Moreover, the SAC clarifies that the grant was to be made out of shares "in the Company's equity pool," presumably meaning shares available under the Plan. *Id*. ¶ 17. Given the parties' prior practice, as alleged in the SAC, plaintiff's expectation that a restricted stock grant "would be fixed and made enforceable in a conversation," *Braun*, 64 F. App'x at 303, becomes somewhat more reasonable.[7]

---

[7] Whether the evidence will ultimately support plaintiff's contention as to the parties' intent to be bound without a writing remains to be seen. Portions of the Plan itself suggest otherwise. *See, e.g.*, Rooney Decl. Ex. E, at ECF pages 17-18 (Plan § 7(b)) ("the prospective recipient of an Award of

Weighing all four *Winston* factors, and taking into account the "totality of the circumstances" as alleged in the SAC, *Ciaramella*, 131 F.3d at 322, I conclude that plaintiff has adequately alleged that the parties intended to be bound by their oral agreement.

### 4.      Breach

"Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Berman*, 580 F. Supp. 2d at 202; *see also Harbor Distrib. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 215 (E.D.N.Y. 2016) (dismissing breach of contract claim for including only conclusory allegations of breach and collecting cases); *N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, 2013 WL 1500333, at *9 (S.D.N.Y. Apr. 12, 2013) (same). Rather, "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (quoting *Wolff v. Rare Medium, Inc.,* 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)).

According to defendants, the SAC fails to plead facts showing that they breached the alleged contract because Wahedna's promise was that "the equity would be issued prior to the close of the next financing round," but only *if* plaintiff remained employed through that date. Def. Mem. at 10. Defendants reason that they were relieved of their equity obligation when plaintiff left the Company in January 2018 – before the next financing round closed – and thus could not have breached the contract thereafter. *Id.* However, Wahedna also promised that the 1.4% restricted stock grant would be approved by the Board on December 12, 2017. SAC ¶¶ 17, 19. The Board met on that date, but Wahedna caused the Compensation Committee to approve "only a fraction of the promised equity (.15% rather than 1.4%)," *id.* ¶ 20, thereby breaching the parties' contract.

---

Restricted Stock will not have any rights with respect to such Award until and unless such recipient has executed an Award Agreement [and] has delivered a fully executed copy thereof to the Company").

*Id*. ¶ 37. Defendants also agreed to pay the second half of the cash bonus by December 31, 2017. *See id*. ¶ 14. As noted above, the SAC alleges that plaintiff was still employed on that date, but no bonus was paid. *Id*. ¶¶ 22, 24. Accepting these allegations as true, plaintiff has plausibly pleaded that the Company breached two material terms of the contract in December 2017 – before he left his employment.

### C.   Specific Performance

A plaintiff seeking specific performance as a remedy for a breach of contract must demonstrate, among other things, that he "has no adequate remedy at law." *Lia v. Saporito*, 909 F. Supp. 2d 149, 168 (E.D.N.Y. 2012) (citing *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.,* 992 F.2d 430, 433 (2d Cir. 1993)), *aff'd*, 541 F. App'x 71 (2d Cir. 2013); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) ("[B]efore the 'extraordinary' equitable remedy of specific performance may be ordered, the party seeking relief must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice.").

Defendants argue that this Court is capable of assessing the value of the securities plaintiff sought, as of the date of the alleged breach, and therefore that plaintiff has an adequate damages remedy. Def. Mem. at 12. Plaintiff counters that where, as here, "[d]efendants agreed to award stock of a private company, specific performance is appropriate." Pl. Mem. at 12.

Plaintiff is correct that specific performance is frequently authorized where there is no public market for the securities in question. *See, e.g*., *Vacold LLC v. Cerami*, 545 F.3d 114, 130 (2d Cir. 2008) ("New York courts routinely award specific performance in cases involving the conveyance of stock in privately held corporations.") (collecting cases). However, "specific performance is an equitable remedy for a breach of contract, rather than a separate cause of action." *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011) (quoting *Cho v. 401-403 57th St. Realty Corp.,* 300 A.D.2d 174, 175, 752 N.Y.S.2d 55,

57 (1st Dep't 2002)); *see also Tierney v. Omnicom Grp. Inc.*, 2007 WL 2012412, at *10 (S.D.N.Y. July 11, 2007) ("Specific performance is a remedy, and a remedy itself cannot be a cause of action."); *Champion Motor Group v. Visone Corvette,* 992 F. Supp. 203, 209 (E.D.N.Y. 1998) ("specific performance is a remedy for breach of contract . . . not a distinct claim").

Moreover, "the issue of whether damages would adequately compensate a plaintiff is inappropriate for resolution on a motion to dismiss the complaint." *Lia*, 909 F. Supp. 2d at 169. *See also Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 2017 WL 4535933, at *5 (E.D.N.Y. Oct. 7, 2017) ("[i]t is premature at the motion to dismiss stage to determine what form of damages may be appropriate" for breach of contract); *Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 415, 729 N.Y.S.2d 425, 429 (2001) ("Whether money damages would adequately compensate plaintiffs for [their] loss . . . is a matter to be resolved at a later stage, not on a motion to dismiss the complaint."). In this case, fashioning an appropriate remedy for breach of the equity terms of the alleged contract may be particularly challenging, because plaintiff was an at-will employee, *see* SAC ¶ 24; Rooney Decl. Ex. A, ¶ 6, and the securities in question were restricted shares which – according to the Plan and related documents – would have been subject to forfeiture had plaintiff left the Company (voluntarily or involuntarily) before the restrictions lapsed.[8]

---

[8] *See* Rooney Decl. Ex. E, at ECF page 19 ("[I]f a Participant's service with the Company and its Affiliates terminates prior to the expiration of the Restriction Period, all of that Participant's Restricted Stock which then remain subject to forfeiture will then be forfeited automatically."); *id.* at ECF page 25 ("all of the unvested Restricted Stock shall be automatically forfeited upon the Participant's termination of service to the Company or any Affiliate for any reason"); *id.* at ECF page 45 ("[I]f your relationship with the Company terminates for any reason (including death or Disability), all restricted shares for which the restrictions have not previously lapsed shall immediately be forfeited by you."). *See also* Rooney Decl. Ex. A, ¶ 9 ("In the event of termination of the employee without cause, the Employee shall retain 100% of the Equity interests *then vested*.") (emphasis added).

I therefore recommend that plaintiff's separately-pleaded claim for specific performance (Count II) be dismissed, without prejudice to his ability to seek (or defendants' ability to oppose) specific performance as a remedy for his breach of contract claim (Count I). *See RJ Capital*, 2011 WL 3251554, at *16 (dismissing plaintiff's separately-pleaded claim for specific performance without making any "finding as to whether specific performance is warranted as a remedy"); *Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 2012 WL 2873648, at *9 (S.D.N.Y. July 10, 2012) (dismissing plaintiff's request for "specific performance or an injunction" without prejudice to plaintiff's ability to request those remedies "at a future date" in connection with its breach of contract claim); *Tierney*, 2007 WL 2012412, at *10 ("Defendant's motion to dismiss Plaintiff's claim of specific performance is granted without prejudice to Plaintiff's ability to request the remedy of specific performance in connection with any of his other surviving claims.").

## D.    Fraud

Plaintiff's third cause of action, for fraud, arises out of the same alleged equity promise that underlies his contract claims, and seeks to recover for the same injury, namely, defendants' failure to grant him "the promised equity." SAC at 11-12, ¶¶ 44-50. In support of his otherwise conclusory allegation that Wahedna had no intention of keeping his promise when he made it, *id*. ¶ 48, plaintiff now offers a supporting fact: that "Wahedna told another senior executive at the Company that he was 'just putting out carrots to keep [Plaintiff] entertained.'" *Id*. ¶¶ 25, 48.[9]

It is well-settled in New York that "[a] cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract." *WIT Holding Corp. v. Klein*, 282 A.D.2d 527,

---

[9] The SAC also contains allegations about other misrepresentations by Wahedna.  *See* SAC ¶¶ 26-28. However, these allegations are wholly unrelated to the matter at hand and should therefore be stricken in accordance with Rule 12(f)(1).

528, 724 N.Y.S.2d 66, 67-68 (2d Dep't 2001). "While a promise made without the intention to perform may be actionable," *Liberty Mut. Ins. Co. v. York Hunter, Inc.*, 945 F. Supp. 742, 749 (S.D.N.Y. 1996) (Kaplan, J.), the plaintiff asserting such a claim must not only support that charge with facts concerning the defendant's intent at the time of promising, *see id.*; he must also "(i) demonstrate a legal duty [on the part of the defendant] separate from the duty to perform under the contract; . . . (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 445 (S.D.N.Y. 2018) (quoting *Bridgestone/Firestone, Inc.* v. *Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996)). The SAC does not allege facts sufficient to establish any of these circumstances.

First, plaintiff has not alleged that either the Company or Wahedna had a "legal duty" to plaintiff "separate from the duty to perform under the contract." *LiveIntent*, 293 F. Supp. 3d at 445.

Second, plaintiff does not allege any misrepresentation that was "collateral or extraneous to the contract." *LiveIntent*, 293 F. Supp. 3d at 445. To the contrary: as discussed above, plaintiff alleges that the promise regarding Board approval in December 2017 was a material contract term, and therefore that the contract was breached when the Board "failed to approve the issuance of the promised equity," SAC ¶ 37, even though the deadline for issuance of the restricted stock had not yet been triggered. Thus, plaintiff's allegation that Wahedna never intended to follow through with his promises regarding Board approval – like his allegation that Wahedna "had no intent of actually causing Wahed to issue the promised equity," *id.* ¶ 48 – does not transform plaintiff's breach of contract claim into a fraud claim. *See Xiotech Corp. v. Express Data Prod. Corp.*, 11 F. Supp. 3d 225, 241 (N.D.N.Y. 2014) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 390, 521 N.Y.S.2d 653, 657 (1987)) (a fraud allegation that is "merely a restatement, albeit in

slightly different language, of the [] contractual obligations asserted in the cause of action for breach of contract does not transform the claim into a tort claim") (alteration in original); *Manas v. VMS Assocs., LLC*, 53 A.D.3d 451, 453, 863 N.Y.S.2d 4, 7 (1st Dep't 2008) (quoting *First Bank of the Ams. v. Motor Car Funding,* 257 A.D.2d 287, 291, 690 N.Y.S.2d 17, 21 (1st Dep't 1999)) ("A fraud-based cause of action is duplicative of a breach of contract claim 'when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract.'"); *Page v. Muze, Inc.*, 270 A.D.2d 401, 402, 705 N.Y.S.2d 383, 384 (2d Dep't 2000) (upholding the dismissal of an employee's fraud claim against his employer based on an oral promise of equity compensation because "[a] cause of action to recover damages for fraud may not be maintained when the only fraud alleged relates to a breach of contract").

Plaintiff argues that even if his fraud claim against the Company is duplicative of his breach of contract claim, he can still maintain a claim against Wahedna (whom he does not name in Counts I and II) for fraudulent inducement. Pl. Mem. at 18-19. Under New York law, "a plaintiff who is induced to enter into a contract with a company due to fraudulent misrepresentations by that company's [CEO] may assert a fraudulent inducement claim against the [CEO]." *Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp. 3d 497, 503 (S.D.N.Y. 2017). However, "[m]isrepresentations made to induce a party to enter a contract," like misrepresentations made by the contracting party itself, "are not actionable as fraud [ ] unless they are 'collateral' to the contract induced." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018) (citing *Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89 (1986)).

*Wild Bunch* illustrates this point. Applying New York law, the court upheld plaintiff's fraud claim against Vendian's CEO, defendant Michael Bassick, based on allegations that Bassick "repeatedly represented" that Vendian had the ability to provide $3 million in movie financing

23

"without further approvals or contingencies," thereby inducing plaintiff to contract with Vendian,

when in fact Bassick's father was "the undisclosed source of Vendian's funds" and Vendian itself,

"contrary to the representations of Michael Bassick and his associates, had no actual funds to help

finance the Picture at the time." 256 F. Supp. 3d at 501. Here, by contrast, the SAC contains no

comparable allegations. Instead, plaintiff's fraud claim rests squarely on his allegation that

Wahedna "had no intent of actually causing [the Company] to issue the promised equity," that is,

of honoring the contract, when he made it. SAC ¶ 48. No other or further misrepresentations are

alleged. Because the only fact allegedly misrepresented was the defendant's "intent to perform

under the contract," *Spinelli*, 903 F.3d at 209, the alleged misrepresentations are central – not

collateral – to that contract.[10]

Finally, plaintiff does not allege any "special damages that are caused by the

misrepresentation and unrecoverable as contract damages." *LiveIntent*, 293 F. Supp. 3d at 445. As

compensatory damages for breach of contract, plaintiff seeks "the value of the shares he was

promised." SAC ¶ 38. He seeks the same compensatory damages – for the same injury, in the same

---

[10] In his opposition brief, plaintiff suggests that Wahedna may also have misrepresented his authority to cause the Board to approve the promised equity, and that such a misrepresentation would have been "collateral" and hence actionable in fraud. Pl. Mem. at 17-18 (citing arguments that defendants raised in response to plaintiff's first motion to dismiss but did not repeat in their second motion). However, the SAC contains no such allegation. To the contrary: plaintiff squarely alleges that "Wahedna controlled 70% of the voting rights of the Board and as such had the authority to cause the Board to issue whatever equity arrangement he deemed appropriate for an employee." SAC ¶ 19. This Court may not rely on facts raised only in plaintiff's brief to save his SAC – particularly not where, as here, the brief contradicts the actual pleading. *See, e.g.*, *Red Fort Capital, Inc v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019) (quoting *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015)) ("it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss"); *Wallace v. New York City Dep't of Corr.*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (rejecting plaintiff's amended complaint, which "directly contradicts the facts set forth in his original complaint," and instead "accept[ing] the facts as described in the original complaint as true" and dismissing claim).

words – for fraud. *Id*. at 12, ¶ 49 ("plaintiff is entitled to recover the value of the shares he was promised").[11]

Plaintiff having failed to plead that defendants owed him a separate legal duty, that Wahedna's alleged falsifications were collateral or extraneous to the contracts, or that he is entitled to compensatory tort damages not available on his contract claim, his third cause of action for fraud should be dismissed. Because plaintiff has now made three attempts to plead fraud, but has failed to allege facts that would move his breach of contract claim into the realm of torts, I conclude that leave to try a fourth time would be futile. Moreover, plaintiff's brief does not identify any additional facts that would cure the deficiencies discussed above. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [he] fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (affirming district court's dismissal of the complaint with prejudice where plaintiff's counsel failed to make any showing that defects in the complaint could be cured). I therefore recommend, respectfully, that Count III be dismissed with prejudice as against all defendants.

---

[11] Plaintiff also seeks punitive damages for fraud. SAC at 12, ¶ 50. Punitive damages are intended "not to make the victim whole but to punish the defendant and to deter egregious conduct," *U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 160 (2d Cir. 1996), and are generally "not available for breach of contract." *Id*. Thus, it is well-settled in New York that "[a] party cannot bootstrap a fraud claim seeking duplicative relief merely by alleging a potential for punitive damages." *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 165 A.D.3d 108, 115, 84 N.Y.S.3d 157, 161 (1st Dep't 2018); *see also Krantz v. Chateau Stores of Canada Ltd.*, 256 A.D.2d 186, 187, 683 N.Y.S.2d 24, 25 (1st Dep't 1998) (holding that fraud claim should have been dismissed because, "with the exception of the unelaborated request for punitive damages on the fraud claim, plaintiff has not claimed any special damages proximately caused by the false representation that are not recoverable under the contract measure of damages. This is further evidence that the causes of action are duplicative."); *Capital One, N.A. v. Auto Gallery Motors, LLC*, 2019 WL 4805253, at *4 (E.D.N.Y. Sept. 30, 2019) (citing *MBIA* and dismissing fraud claim as duplicative of contract claim, noting, "Plaintiff's request for punitive damages does not change the result.").

E.      NYLL § 193

Count IV of the SAC alleges that defendants' failure to pay the second portion of plaintiff's

cash bonus violated NYLL § 193, entitling him to recover that $40,000, plus "another $40,000 as

liquidated damages," plus his reasonable attorney's fees pursuant to NYLL § 198(1-a). SAC at 12-

13, ¶¶ 51-56. Section 193 prohibits an employer, with certain exceptions not relevant here, from

making "any deduction from the wages of an employee." NYLL § 193(1). Although nothing in the

text of that statute suggests that it engrafts a statutory remedy onto what would otherwise be a

common-law contract claim for a bonus payment,[12] the New York Court of Appeals held squarely,

in *Ryan v. Kellogg Partners Institutional Servs.*, that an employer's failure to pay a "guaranteed"

and "nondiscretionary" bonus, which "had been earned and was vested before [plaintiff] left his

job," violated § 193 "and entitles [plaintiff] to an award of attorney's fees under Labor Law

§ 198(1–a)." 19 N.Y.3d 1, 16, 738 N.E.2d 770, 602 (2012); *cf. Truelove v. Ne. Capital & Advisory,*

*Inc.*, 95 N.Y.2d 220, 225, 715 N.Y.S.2d 366, 369 (2000) (holding that an employee who was

offered a "discretionary" bonus "explicitly predicated" on his "continued employment status," but

who "resigned shortly after he received his first quarterly payment," was "not entitled to receive

the remaining three payments").

As noted above, plaintiff adequately pleaded a valid contract entitling him to another

$40,000 bonus payment if he remained at the Company through the end of 2017. He has also

---

[12] *See Malinowski v. Wall St. Source, Inc.*, 2012 WL 279450, at *3 n.5 (S.D.N.Y. Jan. 31, 2012)
(quoting *Monagle v. Scholastic, Inc.*, 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007))
(concluding that an employee who was "was not paid his guaranteed bonuses for the years 2007
and 2008" had no cognizable "wage claim" under § 193, because that section "has nothing to do
with failure to pay wages or severance benefits, governing instead the specific subject of making
deductions from wages").

pleaded facts supporting his claim that the bonus was guaranteed, nondiscretionary, and earned as a result of plaintiff's employment at the Company through December 31, 2017. SAC ¶¶ 14, 18, 22, 24, 53-54. Consequently, his NYLL § 193 claim, for failure to make that payment, survives defendants' motion to dismiss.

###### F.   NYLL § 215

In Count V, plaintiff seeks damages for retaliation under NYLL § 215. SAC at 13, ¶¶ 46-53. Plaintiff expressly alleges that he served the SAC itself upon the Attorney General of New York, thereby notifying her of the retaliation claim as required by NYLL § 215(2)(b). SAC ¶ 1. Although plaintiff apparently failed to provide such notice before filing his initial pleading, most courts considering whether pre-suit notification is a condition precedent to any claim for retaliation have rejected that argument, concluding that "late notice" to the Attorney General is not fatal. *See York Romero v. Bestcare, Inc.*, 2018 WL 1702001, at *4 (E.D.N.Y. Feb. 28, 2018) (collecting cases), *report and recommendation adopted,* 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018). Moreover, in the absence of an express order to the contrary – which this Court did not issue, *see* 2/26/19 R&R, at 33 – a federal plaintiff is not required to file "proof," at the pleading stage, that he notified the Attorney General of his claim.

As relevant here, § 215(1)(a) states that an employer may not "threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter" or has "otherwise exercised rights protected under this chapter." NYLL §§ 215(1)(a)(iii), (vii). Plaintiff has plausibly alleged that by sending a prelitigation letter and draft complaint containing a claim under NYLL § 193, he qualified for the protection of § 215, *see* SAC at 13 ¶¶ 48-49, and that the Abduul-Basser email (with attachments), as described in the SAC at ¶¶ 31-32, 34, was sent by the Company in response to that protected activity.

27

The Court still must determine whether plaintiff has adequately pleaded that the Abduul-Basser email constitutes an "adverse employment action," *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011) (quoting *Higueros v. New York State Catholic Health Plan, Inc.,* 630 F. Supp. 2d 265, 269 (E.D.N.Y. 2009)); that is, an "employment action disadvantaging the plaintiff." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (quoting *Mullins v. City of N. Y.,* 626 F.3d 47, 53 (2d Cir. 2010)). Generally speaking, the test is met if the conduct complained of "might have 'dissuaded a reasonable worker from making or supporting [similar] charge[s].'" *Mullins*, 626 F.3d at 53 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (alterations in the original).

In making that determination, "[c]ontext matters." *Aponte v. Modern Furniture Mfg. Co., LLC*, 2016 WL 5372799, at *15 (E.D.N.Y. Sept. 26, 2016) (quoting *Burlington*, 548 U.S. at 57). In the context of a claim for "post-employment" retaliation, a "relatively narrow" range of conduct has been "recognized in this Circuit as potential unlawful retaliation." *Jian Zhong Li v. Oliver King Enterprises, Inc.*, 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015). However, that narrow range includes instituting "bad faith or groundless counterclaims" or other "bad faith litigation" against the former employee. *Id.* (collecting cases); *see also Paz v. Piedra*, 2012 WL 12518495, at *9 (S.D.N.Y. Jan. 12, 2012) (assuming, without deciding, that the filing of a "wholly meritless" criminal complaint against plaintiff "shortly after [she] filed this law suit" constituted a violation of § 215), *report and recommendation adopted*, *Paz v. Pedra*, No. 09-CV-3977 (LAK), at Dkt. No. 133 (S.D.N.Y. Feb. 1, 2012) and Dkt. No. 185 (S.D.N.Y. April 3, 2015) (Kaplan, J.); *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 132-33 (W.D.N.Y. 2003) (defendant's "actions after learning of the lawsuit, *i.e.,* reporting plaintiffs to the INS and making baseless allegations to the government that plaintiffs are terrorists, constitute an adverse employment action").

Moreover, § 215 explicitly reaches threats as well as fully executed retaliatory actions. *See*, *e.g.*, *Aponte*, 2016 WL 5372799, at *18 (denying summary judgment to defendants on plaintiff Lazzo's retaliation claim after Lazzo testified that defendant Kearny "told him that 'immigration would take me and my son away because I had worked with different names . . . and he said that his attorney would go against my son'"); *Perez v. Jasper Trading, Inc.*, 2007 WL 4441062, at *3 (E.D.N.Y. Dec. 17, 2007) (plaintiffs adequately pleaded a retaliation claim where their employers allegedly "threatened to contact governmental and immigration authorities if the plaintiffs continued to demand just compensation," and also threatened "bodily harm").

In this case, plaintiff has adequately alleged that defendants threatened to file baseless criminal charges in a foreign jurisdiction if he proceeded with the lawsuit. SAC ¶ 31-34. The Abduul-Basser email itself threatened "criminal liability" in multiple "foreign jurisdictions" should plaintiff pursue this action now before the Court. *Id*. ¶ 31. Moreover, in one of attached notices, as described in the SAC, advocate Gupta, writing on behalf of "Wahed Technologies Private Limited" (presumably an affiliate of the domestic entities for which plaintiff worked) expressly threatened to "initiate criminal proceedings" against plaintiff in India, including charges of "criminal conspiracy," "extortion," "dishonest misappropriation of property," "criminal breach of trust," "cheating," "mischief," and "criminal intimidation." *Id*. ¶ 32. These threats, much like the threats of adverse immigration action in *Aponte* and *Perez*, "might have 'dissuaded a reasonable worker'" from proceeding with his NYLL claims, *Mullins*, 626 F.3d at 53, and therefore constitute adverse employment action for purposes of plaintiff's retaliation claim.[13]

---

[13] The second attachment, from an unnamed attorney in the UAE, stated only that Wahedna planned to "take legal action" in his home jurisdiction. SAC ¶ 34. There is no suggestion that the UAE litigation would be criminal, or indeed anything more than a purely defensive suit, akin to a declaratory judgment action in the United States. As pleaded in the SAC, therefore, the second attachment would not, standing alone, rise to the level of retaliation.

Moreover, plaintiff has adequately alleged that the potential criminal claims in India would be "baseless," SAC ¶ 33, since he is a U.S. citizen and sought only to engage in conduct which would not "subject him to criminal liability in India," namely, suing his New York-based employer under the NYLL. *Id*. I note, in this regard, that insofar as can be gleaned from the SAC, plaintiff did not work for Wahed Technologies Private Limited, or any Indian entity, and that none of the conduct at issue in this action took place in India. Under these circumstances, I cannot accept defendants' contention, *see* Def. Mem. at 18-19, that in order to satisfy his pleading burden under NYLL § 215, plaintiff was required to research the criminal laws of India and negate each of the charges listed in the Gupta notice.

## III.   CONCLUSION

For the reasons stated above, I respectfully recommend that defendants' motion be GRANTED IN PART. Count II should be DISMISSED without prejudice to plaintiff's right to request (or defendants' right to oppose) the remedy of specific performance in connection with plaintiff's surviving contract claim. Count III should be DISMISSED WITH PREJUDICE. In addition, paragraphs 26-28, and paragraph 47 on page 13 of the SAC should be STRICKEN. Defendants' motion should otherwise be DENIED and defendants Wahed LLC and Wahed Inc. should be directed to answer.

Dated: New York, New York
       January 8, 2020

_____
**BARBARA MOSES**
United States Magistrate Judge

30

## <u>NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS</u>
## <u>TO THIS REPORT AND RECOMMENDATION</u>

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Lewis A. Kaplan at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Kaplan. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).