UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARSH KHURANA,

       Plaintiff,

-against-

WAHED INVEST, LLC, et al.

       Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/16/2020

18-CV-233 (LAK) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

The Court has received and reviewed (a) plaintiff's letter-application dated October 21, 2020 (Dkt. No. 69), and defendants' responding letter dated October 22, 2020 (Dkt. No. 70), outlining a dispute concerning plaintiff's request for admission (RFA) No. 1; and (b) plaintiff's letter-application dated November 12, 2020 (Dkt. No. 75), which incorporates defendants' response, outlining a dispute concerning the deposition of plaintiff Harsh Khurana. No conference is required as to either dispute.

## Background

Plaintiff Khurana was the Chief Financial Officer of defendant Wahed Invest, LLC and its parent company, defendant Wahed Inc. (Wahed). *See* Second Amend. Comp. (Dkt. No. 35) ¶ 12. Junaid Wahedna was Wahed's Chief Executive Officer and "largest shareholder." *Id*. ¶¶ 8, 17. Plaintiff alleges, among other things, that in September 2017 Wahedna promised him 1.4% of "the Company's outstanding shares" in the form of a grant of restricted stock. *Id*. ¶¶ 16-17. According to plaintiff, Wahedna told him that "he [Wahedna] would cause the decision to grant such equity to be approved by the Board [of Directors]" in December 2017. *Id*. ¶¶ 17, 19. In the event, however, the Wahed board approved a substantially smaller grant to plaintiff, who then resigned his position and filed this action. *Id*. ¶¶ 20, 23.

During the course of the litigation, defendants have argued, among other things, that the Wahed board – not Wahedna personally – had the "*exclusive power*" to grant equity awards, *see* Def. Reply Br. (Dkt. No. 26) at 3 (emphasis in the original), and that since Wahedna was only one of the five members of that board, he did not have the power to issue the equity that plaintiff sought. *See id.* at 5 ("Wahedna Does Not Unilaterally Control the Board").

## Plaintiff's RFA

Plaintiff's RFA No. 1 asked defendants to admit that Wahedna "had the voting power to approve the issuance of equity interest to Plaintiff" in the fourth quarter of 2017, "whether through stock ownership, voting proxies, [or] a combination thereof or other means." Oct. 21 Ltr., Ex. A at 5. It is not clear whether plaintiff sought an admission regarding Wahedna's direct "voting power" on the Wahed board – that is, how many votes he could cast or direct in that forum – or his indirect "voting power" as Wahed's majority shareholder to force the approval of an equity grant by other means.

Taking advantage of the ambiguity of the RFA, defendants read it narrowly and, on that basis, denied it, stating: "Pursuant to the governing corporate documents, decisions regarding the issuance of equity are made by the Board of Directors. Junaid Wahedna was one of five members of the Board of Directors in October, November, and December 2017." Oct. 21 Ltr. Ex. A at 5. Similarly, in response to plaintiff's companion interrogatory (which asked defendants to "explain in detail the factual basis" for their denial of RFA No. 1), they stated, in relevant part, that "decisions regarding the issuance of equity are made by a majority of the Board of Directors present at a meeting at which there is a quorum," and that because Wahedna was "one of five members" of the board, he alone "did not have the voting power to approve the issuance of equity interest to Plaintiff." Oct. 21 Ltr., Ex. C at 4. Defendants have acknowledged, through

2

their counsel, that Wahedna "held a majority of the common stock (voting stock)" of the company. *See* Oct. 21 Ltr., Ex. D at 1. However, their formal RFA response does not include that fact. Nor do defendants address whether, as the company's CEO and majority shareholder, Wahedna had the indirect power to control the board vote regarding plaintiff's equity issuance.[1]

Plaintiff now contends that defendants' RFA response and interrogatory answer are "incomplete" and "not correct." Oct. 21 Ltr. at 3-4. According to plaintiff, Wahedna had the power to cause the board to issue equity to plaintiff – and should so admit – because Wahed's bylaws provide that the holder(s) of a majority of the voting shares issued and outstanding "shall constitute a quorum for the transaction of business" at a stockholders' meeting, and that once a quorum was present the same majority "shall decide any question brought before such meeting." *Id*. at 3. Plaintiff asks this Court to order defendants to "provide a response to the admission [sic], without objection, and," if it is again denied, "provide a complete, verified response to the interrogatory, free from objection, explaining in detail the basis for its denial." *Id*. at 4.

Defendants insist that they answered the RFA completely and in good faith. Oct. 22 Ltr. at 2-3. They point out that the cited bylaw provisions govern stockholders' meetings, not board meetings. *Id*. at 2 n.2. Thus, according to defendants, Wahedna's majority stock ownership was "irrelevant" because it "did not provide him with power to approve the issuance of equity to

---

[1] It is a "central premise" of the law of Delaware, where Wahed is incorporated, that "controlling stockholders have no inalienable right to usurp the authority of boards of directors that they elect." *Hollinger Inc. v. Hollinger Int'l, Inc.*, 858 A.2d 342, 387 (Del. Ch. 2004), *appeal refused,* 871 A.2d 1128 (Del. 2004) (noting that Delaware law "vests most managerial power over the corporation in the board, and not in the stockholders"). *See also In re CNX Gas Corp. S'holders Litig.,* 2010 WL 2291842, at *15 (Del. Ch. May 25, 2010) ("[D]irector primacy remains the centerpiece of Delaware law, even when a controlling stockholder is present."). Absent an "inalienable" right to control a board vote, however, a controlling shareholder may have other means to do so, particularly if a majority of the directors are employed by, were elected by, or could be replaced by the controlling shareholder.

3

Plaintiff." *Id*. at 2. The Court agrees that whether Wahedna had the power to constitute a quorum and decide a question brought before a stockholders' meeting is not necessarily conclusive of whether he had the power (through his ability to convene and control a stockholders' meeting or otherwise) to compel the board to issue equity to plaintiff. Once again, however, defendants do not address that broader question.

Given the ambiguity of the RFA posed by plaintiff, and the complexity of the mixed questions of law and fact that it raises, defendants will not be required to serve an "unqualified admission" to the RFA. Nor will they be required to amend their answer to the companion interrogatory, which goes well beyond the limits of Local Civil Rule 33.3.

The purpose of Fed. R. Civ. P. 36, governing RFAs, "is to allow for the narrowing or elimination of issues in a case. The rule is not properly speaking a discovery device, rather it is 'a procedure for obtaining admissions for the record of facts already known' by the seeker." *Dubin v. E.F. Hutton Grp. Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y. 1989) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2253 (1970)). *See also Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003) ("Requests for Admissions are not a discovery device much like interrogatories, demand for documents, or depositions, nor are they to be considered substitutions for them. Discovery pleadings are expected to elicit and expound upon the facts of the matters, whereas, the Requests for Admission essentially, and hopefully, limit the factual issues in the case.") (citations omitted).

Although a party may seek admissions as to "the application of law to fact," Fed. R. Civ. P. 36(a)(1)(A), its RFAs must still be "simple and direct." 2 M. Silberberg, E. Spiro & J. Mogul, *Civil Practice in the Southern District of New York* § 22:4, at 284 (2016-17 ed.); *see also Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y. 1992) (collecting cases). Litigants are not

required to answer RFAs that "contain vague and ambiguous wording that does not allow defendants fairly to admit or to deny them." *Dubin*, 125 F.R.D. at 376. "The party requesting admissions bears the burden of setting forth its requests simply and directly, not vaguely or ambiguously." *BAT LLC v. TD Bank, N.A.*, 2018 WL 3626428, at *5 (E.D.N.Y. July 30, 2018); *accord Henry*, 212 F.R.D. at 77.

In response to a properly constructed RFA, a party must either admit the matter, "specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). An RFA denial "must fairly respond to the substance of the matter." *Id.* If it does not, the Court may "order either that the matter is admitted or that an amended answer is served." Fed. R. Civ. P. 36(a)(6). Although it is "not always easy" to determine whether a party has drafted or responded to an RFA appropriately, "[t]he Court is 'invested with substantial discretion under Rule 36'" to resolve such questions and control discovery accordingly. *Versatile Housewares v. SAS Grp.*, 2010 WL 11601225, at *1 (S.D.N.Y. July 15, 2010) (quoting *Dubin*, 125 F.R.D. at 373); *accord In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 6290584, at *4 (S.D.N.Y. Oct. 27, 2020).

In this case, it is apparent to the Court that through plaintiff's RFA and defendants' response the parties are talking past one another. This is not due to any dispute about the facts (as noted above, the parties appear to agree that Wahedna held one seat on the Wahed board of directors and controlled a majority of its voting stock); it is because the RFA used broad and ambiguous terms (such as "voting power" and "approve"), which in turn gave defendants the opportunity to craft a narrow answer that did not fairly meet the gist of what plaintiff likely intended to ask: whether, given his majority stock ownership, Wahedna had the power, directly or indirectly, to deliver a 1.4% equity grant to plaintiff. However, it is "not the job of the Court to

correct a party's sloppy drafting[.]" *BAT LLC*, 2018 WL 3626428, at *6. Moreover, the issue dividing the parties is vigorously disputed, highly complex, and therefore inappropriate for a single RFA, even if plaintiff could reframe the question to eliminate the ambiguities that plagued his first effort. The resolution of the "power" question may ultimately require review of multiple corporate documents, consideration of facts not yet known (for example, the identities of the other directors and their relationship to Wahedna), and an analysis of those facts under the law of Delaware.

Nothing in this Order prohibits plaintiff from exploring these matters with Wahedna at his upcoming deposition. And nothing prevents plaintiff, thereafter, from serving "simple and direct" RFAs, "limited to singular relevant facts," which "can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification." *Richard v. Dignean*, 332 F.R.D. 450, 461 (W.D.N.Y. 2019) (internal quotations and citations omitted). However, insofar as plaintiff's October 21, 2020 letter-application seeks an order compelling a further response to RFA No. 1 or its companion interrogatory, the application is DENIED.

## Plaintiff's Deposition

The question raised by the parties' November 12, 2020 letter is whether plaintiff's deposition, which the parties originally planned to conduct in person, should be (a) taken by remote means before November 25, 2020, which is the current deposition deadline (*see* Dkt. No. 72), or (b) postponed until such time as it is safe, in light of the ongoing COVID-19 pandemic, to conduct an in-person deposition in New Jersey of a witness whose household – the Court is told – includes a person who has recently undergone transplant surgery. This is not a close question.

The deposition shall proceed remotely in accordance with this Court's Order dated March 17, 2020. (Dkt. No. 62.)

The Court understands that, in an ideal world, defendants would prefer an in-person deposition of plaintiff Khurana, particularly because, as they explain, numerous documents must be reviewed during the examination and "several million dollars" are potentially at issue in this action. Nov. 12 Ltr. at 1-2. However, the parties have already agreed to a remote deposition of Wahedna (which will be equally document-heavy); thus, neither party will be unfairly disadvantaged by conducting both examinations in that manner. Moreover, we do not live in an ideal world. While the Court would like to be optimistic about the time frame within which in-person depositions will once again become routine in this district (and elsewhere), our nation's recent experience suggests that it would be unwise to delay the conclusion of plaintiff's deposition until such time as "it is safe to do so" in person. *Id*. 2. Consequently, the parties' November 12, 2020 letter-application, which the Court construes as a request by plaintiff for an order compelling defendants to conduct plaintiff's deposition remotely within the current deposition schedule, is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 69 and 75.

Dated: New York, New York
November 16, 2020

**SO ORDERED**.

**BARBARA MOSES**
**United States Magistrate Judge**